Worthington's Admr., vs. DeBardlekin, Ad.

## WORTHINGTON'S ADMR., V. DEBARDLEKIN, AD.

*Practice in Supreme Court, where no declarations of law by Circuit Court.*

Where there is a motion for new trial in the Circuit Court, though the Court make no declarations of law, the Supreme Court will look into the bill of exceptions to see if there is any evidence to sustain the findings of the Court. sitting as a jury, and whether as matter of law, a party is entitled to judgment upon the facts found.

LIMITATIONS:

The statute of limitations did not begin to run against a note executed during the war until the proclamation of peace, 2d April, 1866.

SAME: *Non-claim.*

Where the bar of the statute does not attach in the life of a party, the general statute of limitations ceases and the statute of non-claim is applied.

SAME: *New promise.*

A verbal promise to pay a barred debt does not revive it, and a promise in writing does not revive the old debt, but gives a new cause of action co-extensive with the promise.

BANKRUPTCY: *New promise.*

A verbal promise to pay a debt discharged in bankruptcy revives the debt.

APPEAL from *Chicot* Circuit Court.

Hon. T. F. SORRELLS, Circuit Judge.

*Reynolds* for Appellants.

*Rose* Contra.

ENGLISH, C. J.

This suit was commenced in the Probate Court of Chicot county, upon the follawing claims :

Estate of Elisha Worthington, Dr., To H. F. DeBardlekin, administrator of David Pratt.

To twenty-five per cent. of the amount of a due bill made by said Elisha Worthington in his life time to Daniel Pratt, for $5,760.00, and which said Worthington promised Mr. T. F. Ticknor, agent, etc., at divers times that he would pay twenty-five per cent. of $5,760.00 .............. $1,440.00.

The claim was authenticated by the affidavit of Henry F. DeBardlekin, as administrator of Daniel Pratt, deceased, made before a justice of the peace on the 14th day of November, 1874.

It was presented by him for allowance to E. T. and J. M. Worthington, administrators of Elisha Worthington, deceased, on the 3d of December, 1874, and by them rejected.

It was filed in the office of the clerk of the Circuit Court on the 15th of April, 1875, and presented to the court for allowance at its January term, 1876, and the court upon the evidence produced by the parties, and without formal pleadings, allowed the claim for $1,440.00 against the estate of Elisha Worthington, and his administrators appealed to the Circuit Court.

At the January term 1877, of the Circuit Court, the case was submitted to the court sitting as a jury, upon depositions and other evidence introduced by the parties, and by the court taken under advisement until the following July term, when the court announced its findings in writing as follows :

" This cause coming on to be heard and both parties being represented by their counsel, and this cause being submitted to the court sitting as a jury, and there being no declarations of law required of the court by either party, but the cause being

submitted on the depositions and other evidence in the cause, the court doth find that the defendant's intestate, after his discharge is bankruptcy, did make an unconditional promise to pay plaintiff twenty-five cents on the dollar of the debt barred by his bankruptcy, and that said promise is within the statute of limitations.

"From the above findings of fact, the court declares the following to be the conclusion of law, viz:　That the claim herein is a legal claim against said defendant's intestate for the sum of $1,440 with interest thereon from December 3d, 1874, and that said claim be classed in the 5th class of claims against said estate to the amount of said sum and interest as aforesaid."

Judgment was entered accordingly.

The defendants filed a motion for a new trial on the following grounds:

1. The findings or conclusions of fact are not sustained by the evidence.

2. The conclusions of law are erroneous.

3. The decision and judgment of the court are contrary to the law and evidence.

4. Upon the whole case the findings and judgment of the court should have been for defendants.

The court overruled the motion, and the administrators of Worthington took a bill of exceptions, and appealed to this court.

I.　It is submitted by the counsel for appellee that no question of law having been reserved in the court below, there is nothing for this court to decide, citing *State Bank v. Conway, 13 Ark., 344*, and subsequent cases in which the ruling in that case was followed.

In the leading cases cited, the court, after reviewing the previous decisions on the subject, and discussing the province of the jury, or the court sitting as a jury, to pass upon the

the facts, the law in reference to the granting of new trials, etc., *held* that where a party merely excepts to the finding of the court, or jury, setting out the testimony without any motion for a new trial, and without any exception whereby he shall put his finger upon the alleged error of law as to any ruling or decision of the court below, there is no case presented for the consideration of the court, on error or appeal.

In the case now before us, there was a motion for a new trial, and though the court made no declarations of law, none being asked by either party, we certainly can look into the bill of exceptions to see if there was any evidence to sustain the findings of the court, sitting as a jury, and whether, as matter of law, the plaintiff below was entitled to judgment upon the facts found.

II. The court found from the evidence that after Elisha Worthington had been discharged in bankruptcy, he made an unconditional promise to pay twenty-five per cent upon the note mentioned in the claim sought to be probated against his estate, and that the promise was not barred by limitation, and declared as a conclusion of law, upon the facts found, that the plaintiff below was entitled to judgment allowing and classing the claim against the estate of Worthington, and rendered judgment accordingly.

It was proven that late in the year 1859, or early in the year 1860, Daniel Pratt sold to Elisha Worthington of Chicot county, Arkansas, twelve eighty-saw gin-stands, at six dollars per saw, or $480 for each stand, making $5,760.00, for which Worthington afterwards executed to Pratt the following note, which is the due bill referred to in the claim sought to be probated.

"$5,760.00, Chicot county, Arkansas, March 6, 1862.   Due Daniel Pratt, when the blockade is removed, that cotton can be freely sold in the market in New Orleans, five thousand

seven hundred and sixty dollars, with interest on said sum from the first of January, 1861, til paid.    Interest at the rate of eight per cent per annum.

E. WORTHINGTON.''

It was admitted that Worthington went into bankruptcy in February, 1868, and was discharged 20th of February, 1870.

He died 19th November, 1873, and on the 25th of the same month, letters of administration upon his estate were issued to appellants.

It was admitted that Pratt and Worthington were both residents of this State before and during the civil war, and that the Federal forces captured New Orleans May 24th, 1862. That Worthington never, in writing, made any promise that would take the claim or said due-bill or note out of the statute of limitations if the same was otherwise barred

It was also admitted that the lands belonging to the estate of Worthington, were valued on the tax-book at $32,000.00, and that the account current of his administrators showed a balance in their hands of over $7,000, and that all of the debts probated against his estate had been paid except the claim sued on, and a judgment which had been appealed from, of Martha W. Mason, for $12,000.

As to the promise of Worthington to pay twenty-five per cent on the note ; Samuel F. Tichnor, on his examination in chief, deposed, in substance, that as agent of Daniel Pratt, he called on Worthington in the winter of 1868, at his residence, Sunny-Side Landing, and asked him to pay for the gin-stands.   He replied that he could not then pay, but would pay, as it was a just debt.

Witness called to see him again in January, 1870, and he then said he had paid a large debt, which he regretted, and had paid some other debts for twenty-five cents on the dollar, and promised that he would pay that amount on the gin-stands ;

said that he had some of them on hand, and was using them. At this time he was living near the Lake, on his Red Leaf plantation.

Witness called on him again 18th December, 1871, and he then said that he would pay the twenty-five per cent on the gin-stands, and that witness need not call again. That he thought that he could pay a part of the money that winter, and would either send a check or pay the money over to Esquire Springer. The reason why he thought that he could not pay that winter was, he said, that he had to build a house to live in. He further said to witness : "I am not telling you lies to get rid of you ; that would be very absurd in me, an old man." He said further, that Pratt had not opposed him in getting his discharge in bankruptcy, and upon the honor of a man that the twenty-five per cent of the amount of the gins should be paid out of that crop and the next.

On cross-examination, witness repeated, in substance, the above statements, and also deposed that he offered to give up the old papers to Worthington, and asked him to give new ones, and he said that the old one was good, and gave witness his word and honor that he would pay the amount agreed on.

The testimony of this witness was to some extent corroborated by the deposition of Martha W. Mason, who lived with Worthington, and heard some of the conversation between him and Tichnor about the gin-stands debt.

The only promise proven to have been made by Worthington to pay twenty-five per cent upon the debt, after his discharge in bankruptcy, was that of 18th December, 1871, which was about one year, eleven months and seven days before the grant of letters of administration upon his estate to appellants.

The note not being under seal, five years was the period of limitation applicable to it. It was executed 6th of March, 1862, when the civil war was flagrant, payable on the removal

of the blockade at New Orleans, but the statute of limitations did not commence to run against it until the proclamation of peace, 2d of April, 1866. *Mayo & Jones* v. *Cartwright, ad. et al* , 30 Ark., 414 ; *Shinn* v. *Tucker*, M. S.

Putting out of view the bankruptcy of Worthington, and the verbal promise after his discharge to pay part of the debt, any suit upon the note was barred by the statute of limitations before his death, which occurred 19th November, 1873, and of course there was no right of action upon the note against his administrators.

Moreover, at the time the promise was made (18th December, 1871), the note was barred by limitation, as well as discharged in bankruptcy.

The court below, however, treated the suit as being founded upon the new promise to pay part of the debt, and not upon the note, and found that the promise was made within the period of limitations.

If the suit was upon the new promise and could be maintained upon it, three years was the period of limitation applicable to it, the promise being verbal, and the time had not run out when letters of administration were granted to appellants, and then the general statute of limitations ceased to run, and the statute of non-claim applied, and the suit was commenced against the administrators within two years from the grant of letters. *Walker as ad.* v. *Byers*, 14 Ark., 247.

But by statute, a verbal promise to pay a debt barred by limitation will not revive the debt, or remove the bar. Of course such a promise to pay part of the debt will not remove the bar as to such part.

If Worthington had made a written promise to pay one-fourth of the note, after it was barred by limitation, such promise would not have revived the old debt, but would have

given a new cause of action, co-extensive with the promise. *Duffin* v. *Phillips*, 31 Ala., 573, and citations.

So a verbal promise to pay a debt discharged in bankruptcy will revive the debt. *Apperson & Co.* v. *Stewart*, 27 Ark., 619; and a promise to pay part of the debt, may, limitation being out of the way, give a new cause of action for so much.

But here the whole debt was barred by limitation, and the verbal promise removed the bar from no part of it.

There were no written pleadings, and none were required, but appellants relied on two defenses; the statute of limitations and the discharge of their intestate in bankruptcy. The latter defense was defeated by the verbal promise to pay the part of the debt sued for, but the former defense was in no way avoided.

It follows that upon the facts in evidence, appellee was not entitled to a verdict and judgment.

Reversed and remanded for a new trial.