NORVELL *v.* JAMES.

4-9328                                    234 S. W. 2d 378

Opinion delivered December 4, 1950.

*John Sherrill* and *Thomas J. Bonner*, for appellant.

*Wright, Harrison, Lindsey & Upton* and *Edward Lester*, for appellee.

DUNAWAY, J. The Commissioners of the Little Rock Municipal Water Works appeal from a judgment in favor of appellee James, rendered by the Pulaski Circuit Court. The cause was submitted to the court sitting as a jury.

James brought this action against appellants to recover a balance alleged to be due under a written contract entered into on April 24, 1946. James had contracted with appellants to do certain work in laying water mains from the filter plant of the Water Works down to and within the business district of Little Rock. Beginning at Second and Pulaski Streets and continuing east into and through parts of the downtown business district of Little Rock, the work necessitated cutting the pavement and digging trenches in forty-one blocks of the city streets.

Upon completion of the work the Commissioners withheld a part of the contract sum of $122,074.37 claimed by James to be due him. Several disputed items were involved in the amount initially withheld, but we are concerned with only one. The judgment now appealed from arises out of a difference between the parties over the manner in which appellee refilled the trenches and maintained this temporary refill.

In his complaint James alleged that he had "fully complied with the contract and completed the work contemplated thereunder" and that the sum of $1,726.11 due him was being wrongfully withheld. This represented the cost of work done by the City of Little Rock in applying cut-back or hot asphalt to the surfaces of the trenches which appellee had caused to be filled with clay gravel.

Appellants' defense to the suit was that James had not complied with the terms of his contract, in that he had not filled the trenches with macadam in accordance with required specifications; and that, as authorized by

the contract, they had procured the temporary resurfacing work by the City as the cheapest means of remedying James' default in performance. The cost of this work they claimed to be entitled to deduct from the total contract price of the project.

The trial court made this finding of fact in rendering judgment for the plaintiff: "The Court finds that the trenches dug by the plaintiff were not paved with broken stone macadam as required by the contract but that they were paved with gravel, which the Court finds to be a substantial compliance with the terms of the contract, and therefore plaintiff is entitled to recover $1,726.11 which defendant incurred in applying cut-back to the trenches."

In their motion for new trial, and in their argument here, appellants urge that the trial court erred (1) in finding that appellee had substantially complied with the contract and (2) in rendering judgment for appellee when the court found that the trenches "were not paved with broken stone macadam as required by the contract."

The relevant provisions of the contract concerning the temporary refilling of trenches by the contractor are quoted: "Paragraph 28.4. The attention of bidders is called to the specifications covering the maintenance of trenches and temporary repaving of broken stone macadam to be replaced and maintained by the Contractor; however, the bidder shall have the option of maintaining trenches by the use of suitable wooden platforms, provided that such platforms are properly and adequately maintained so as to be in nowise an obstruction to traffic at all times. In the event that the timber platforms are not properly and adequately maintained this option will be withdrawn and the CONTRACTOR will be required to place the broken stone macadam and maintain same in all trenches as provided by the specifications."

"Paragraph 59.3. Where it is important that the surface of the backfill be made safe for vehicular traffic as soon as possible, or where a permanent pavement is to be placed within a short time, the upper twelve (12")

inches of backfill shall be of approved moist material, thoroughly compacted in four (4″) inch layers by tamping and shall be brought to the required surface grade."

"Paragraph 59.10. Temporary paving of all ditches in traveled streets shall be done by the CONTRACTOR as a part of this contract and without additional compensation therefor. Temporary paving shall consist of a broken stone macadam wearing surface or of suitable wooden platforms."

The provision of the contract under which the Commissioners proceeded to have the resurfacing work done themselves and claim the right to deduct the cost is as follows: "Paragraph 32.1. If the CONTRACTOR shall neglect to prosecute the work properly or fail to perform any provisions of the contract, the OWNER, after three days' written notice to the CONTRACTOR may, without prejudice to any other right or remedy he may have, make good such deficiencies and may deduct the cost thereof from any payments then or thereafter due the CONTRACTOR."

The proof shows that along approximately three blocks the surface of the trenches was covered with loose crushed stone. This proved unsatisfactory, as the loose stone scattered over the street when cars drove over it, and the rest of the trenches were refilled with clay gravel which had been removed in digging the trenches. It was admitted that no tamping had been done; compaction in the back-filling had been obtained by jetting water into the ditches and letting the clay gravel settle.

It was conceded that on no part of the refilling job was macadam used. In *Webster's New International Dictionary* macadam is defined as "the broken stone used in macadamizing" and macadamizing as "to construct or finish (a road) according to the system invented by John Loudon McAdam, which consisted in compacting into a solid mass a layer of small broken stone on a convex well-drained earth roadbed; hence, to construct any road of broken stones, as on a bed of large stones . . .". From the testimony of appellee himself, as well

as that of engineers for appellants, it is clear that the term "macadam" is a technical one applied to broken stone, of various sizes, so laid that it gains a certain compaction.

Appellants insist that appellee's use of clay gravel was not a substantial compliance with the contract,. but that even if it was, appellee cannot recover the full contract price where only substantial compliance is established.

This court has held that one may recover on a contract upon a substantial performance of it, but from the contract price there must be deducted either the additional cost of literal compliance or the cost of correcting the defects in the work, *Mitchell* v. *Caplinger,* 97 Ark. 278, 133 S. W. 1032; *Thomas* v. *Jackson,* 105 Ark. 353, 151 S. W. 521; *Hollingsworth* v. *Leachville Special School District,* 157 Ark. 430, 249 S. W. 24.

Counsel for appellee concede that this is a correct statement of the law, but urge that it has no application to the instant appeal. Appellee argues that there was testimony before the trial court that one Ryan, the on-the-job work inspector for the Water Works, daily saw the method of temporary filling which was being used. Appellee testified in effect that Ryan authorized this admitted departure from the terms of the contract. From this, counsel argue that as the work progressed, there was a modification of the contract requirements, permitting the use of clay gravel instead of macadam.

The argument then is, that whether the contract was modified was a fact question for the determination of the court sitting as a jury. According to appellee's theory of the case, our review on this appeal is limited to an examination of whether there is any substantial evidence to support the judgment of the court.

It is well settled that fact findings by the trial court in a case such as this are treated with the same finality as are jury verdicts on appeal, and will be affirmed if supported by any substantial evidence. See *Luster* v.

*Robinson,* 76 Ark. 255, 88 S. W. 896; *Dunaway* v. *Ragsdale,* 177 Ark. 718, 9 S. W. 2d 6; *Schulze* v. *Price,* 213 Ark. 732, 213 S. W. 2d 365. Where the court makes no special findings of fact or declarations of law, and none are requested, we look only to see whether there is any substantial evidence to support the judgment.

Appellee contends that since no special findings were requested, by either side our review is so limited in our consideration of the case at bar. This argument, however, overlooks the fact that the court on its own motion did make a special finding of fact. We have held that a special finding by the court cannot be treated as surplusage and disregarded, even though a judgment might have been sustained but for the special finding. *Henderson* v. *Gladish,* 198 Ark. 217, 128 S. W. 2d 257.

In the instant case, without detailing all the testimony, it is enough to say that there was substantial evidence to sustain a finding either way on the issue of substantial performance. The trial court's determination is therefore conclusive of this issue. But this still leaves for decision the question of law: did the special finding warrant the judgment entered thereof? As this court said in *Worthington's Admr.* v. *DeBardlekin, Ad.,* 33 Ark. 651 (at p. 654): "In the case now before us, there was a motion for a new trial, and though the court made no declarations of law, none being asked by either party, we certainly can look into the bill of exceptions to see if there was any evidence to sustain the findings of the court, sitting as a jury, and whether, as matter of law, the plaintiff below was entitled to judgment upon the facts found." See, also, *Supreme Royal Circle of Friends of the World* v. *Morrison,* 105 Ark. 140, 146, 150 S. W. 561.

Here the court found "the trenches dug by the plaintiff were not paved with broken stone macadam *as required by the contract"*. The necessary implication of this finding is that there had been no modification of the original contract of April 24, 1946, upon which appellee predicated his action. Again, since there is substantial evidence to support this finding, we see no occasion to

detail the conflicting testimony on the point. This finding is as conclusive against appellee on the issue of modification of the contract as is the finding of substantial compliance against appellants.

It follows that under the rules of law above-stated as to substantial performance, the judgment for the full amount of the contract price is not supported by the special findings of fact. The court should have allowed a deduction of the necessary cost of correcting the defect in appellee's performance of his contract.

The judgment will be reversed and the cause remanded for a new trial.