BLACK & WHITE, INCORPORATED v. RESERVE INSURANCE COMPANY

5-4165                                       414 S. W. 2d 369

Opinion delivered May 8, 1967

*Butler, Greene & Byrd* and *Rose, Meek, House, Barron, Nash & Williamson,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

COURTNEY C. CROUCH, Special Justice. This is an action by the appellant to recover $6,000.00 under an excess liability policy issued by the appellee, Reserve Insurance Company. The trial court, hearing the case without a jury, entered judgment for the defendant.

Appellee's defense was predicated on the appellant's failure to comply with the terms, provisions and conditions of the policy. The appellant contends, for reversal, that the lower court erred in finding that the appellant's conduct was a material breach of a provision of the excess policy.

For a better understanding of the issues raised by this appeal and our conclusions, we briefly summarize the facts. Appellant, Black & White, Inc., carried primary liability insurance coverage with a maximum limit of $10,000.00 for each person in another company. On September 10, 1964, a vehicle operated by one of appellant's employees was involved in an accident which resulted in a suit being filed against it on January 14, 1965, by Owen W. Ashley for personal injuries. A judgment was rendered against the appellant in favor of Ashley on July 8, 1965, in the amount of $16,000.00. The primary carrier paid its maximum coverage on said judgment, leaving a balance of $6,000.00

Appellant first notified the appellee of the accident

and pending litigation by letter dated January 31, 1965, in which it stated that the primary carrier had referred the matter to its counsel for defense. The letter further stated:

"Since the physical damage was minor and there were no injuries complained of at the time of the accident, we believe the case can be settled without trial. We will keep you informed of future developments as the [sic] occur."

Then on April 22, 1965, appellant, Black & White, notified the appellee by letter that the case was set for trial July 8, 1965, but that a settlement had been tentatively agreed upon and needed only Mr. Ashley's approval. Reserve was further advised that it would be notified immediately should developments occur that would change the present course and delay the settlement.

Byrd Pollard, superintendent of claims for the appellee, testified that on May 25, 1965, he telephoned Bob James, assistant manager of Black & White. James was author of the letters referred to above. At that time, James advised him that the case had been settled within the primary policy and that he had made such a notation on the file. Nothing further was heard or reported to appellee until it was advised that judgment had been entered against the appellant on July 8, 1965. James denied that he had advised Pollard that the case had been settled.

Appellant made demand upon appellee to pay the $6,000.00 excess judgment, which it refused to do, so appellant paid said sum and brought this action for reimbursement, attorneys fees and penalties.

The excess policy provides as follows:

A.

"This policy covers excess limits as shown in Sec-

tion I after and only after the limits, as shown in Section II,, of another insurance company, referred to as the primary insurer, are fully used and exhausted."

The conditions of the policy provide as follows:

"1. It is agreed that this policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the primary insurance in all respects, including changes by endorsement . . ."

"2. Notice of any accident, which appears likely to involve this policy, shall be given to the company, which at its own option, may, but is not required to participate in the investigation, settlement or defense of any claim or suit. In the event expense and/or costs in connection with any claim or suit is incurred jointly by mutual consent of the company and of the insured or primary insurer, the company, in addition to the limit of liability, as expressed in Item 5, Section 1, of the Declarations shall be liable for no greater proportion of such expense and/or costs than the amount payable by the company under this policy bears to the total loss payment."

The primary policy provides in Section 18 as follows:

"18. Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at its own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."

In its brief, appellant contends there is an ambiguity

in the excess policy as to whether the primary policy's cooperation conditions are applicable as between the excess insurer and the insured. However, we find no ambiguity as it is quite clear that the excess policy clearly incorporated by reference all the conditions, agreements and limitations of the primary policy, which in our opinion makes the above quoted Paragraph 18 of the primary policy a part of the excess policy.

It is well settled that fact findings by the trial court in a case such as this are treated with the same finality as are jury verdicts on appeal and will be affirmed if supported by substantial evidence. *Norvell* v. *James*, 217 Ark. 932, 234 S. W. 2d 378, (1950).

The trial court made no specific findings of fact or conclusions of law but as a preface to announcing its decision stated:

"May 28, 1965, you notified it had been settled within primary limits. Judgment will be for the defendant."

We also note that at one point in the proceedings the court said:

"They have pleaded you did not cooperate and you have not cooperated if you told them that a claim had been filed and then wrote back and said it had been settled and later let it go to judgment. You have not cooperated. You have lulled them."

We think the court's findings that the appellant had advised the appellee that the claim had been settled within the limits of the primary coverage is supported by substantial evidence. We further reach the conclusion that the trial court found that Black & White failed to cooperate.

We, therefore, examine as a matter of law whether these facts would prevent appellant from recovering un-

der the excess insurance policy in question.

Appellant contends that lack of cooperation must be proved by the insurer to have been willful and premeditated and in this connection cites *U. S. F. & G.* v. *Brandon,* 186 Ark. 311, 53 S. W. 2d 422 (1932). However, after a careful review we reach an entirely different interpretation of this decision. In that case, the insured failed to attend the trial and the insurer contended that this constituted a failure to cooperate in violation of the express provisions of the policy requiring him to cooperate. This court in passing on the matter said:

"It is the duty of the insured to cooperate with the defendant by lending aid and such information as he possessed in preparing the case for trial and to attend the trial and testify as to the true facts and circumstances concerning the accident. Without his presence and aid, the insurance company was seriously handicapped. But there is nothing in this record to show the reason for his absence from the trial. For all we know, he may have been seriously ill or dead. We are, therefore, of the opinion that it was the duty of the insurance company in this action to go further than showing his mere absence from the trial in order to show lack of cooperation and to show the reason for such absence. We cannot, therefore, say as a matter of law that his failure to attend the trial in the absence of any proof or explanation as to why he so failed established a breach of the contract in this regard. On the contrary, we think that it was a question for the jury and that it was the duty of the appellant in the trial to show that the insured had no good reason to absent himself from the trial."

We do not interpret the term "no good reason" as used by the court in the Brandon case to encompass willful, deliberate or premeditated failure to cooperate. For example, the insured might have testified that

he knew that the case was set for trial on a given date but simply forgot it, and certainly this would not be willful, premeditated or deliberate as the terms are normally used, but it would be "no good reason" for being absent from the trial.

The policy reads, "The insured shall cooperate with the company, and etc." In the Brandon case this court said the word "cooperate" is a simple word and anyone with sufficient intelligence to qualify as a juror in a civil action would know that it simply means to operate with or work together. Appellant and appellee had been working together up to a point, but when appellant advised that the case was settled and then took no steps to retract the information or notify appellee the case was to be tried, it certainly was not working with the appellee. We think that rather than assisting the insurer that it was operating in the opposite direction! Such action would certainly operate as a breach of the cooperation clause in the policy of insurance.

The appellant in the Brandon case cited authorities from other jurisdictions to justify its position but in each of the cases cited, as pointed out by this court, the insured had willfully and deliberately failed to attend the trials. However, at no place did this court say in Brandon it was incumbent on an insurance company to prove willful or deliberate failure to cooperate before invoking the non-cooperation clause. Neither did the court point out what reasons might constitute failure to cooperate. We are, therefore, of the opinion that the Brandon decision is not applicable in this case. In fact, we are unable to find any case law in any jurisdiction applicable to the facts in this case.

Appellant further contends it is incumbent upon the insurer to prove it has been prejudiced before it can invoke the non-cooperation clause. There is a wide divergence of opinion in other jurisdictions as to whether prejudice is necessary in order to enable an insurance company to avoid liability where there has been a breach

of the cooperation clause. This point has never been decided by this court and we do not deem it necessary to pass on this matter at this time, as we think both prejudice and a material violation of the cooperation clause have been shown in this case.

When appellant notified the appellee that the case had been settled and failed to retract this misstatement of fact, appellee was precluded from doing anything to protect its obligations under its excess policy.

Appellee argues that appellant had done nothing but watch and wait and it would probably have not done anything even if it had been notified of the trial. However, from the very beginning appellant led appellee to believe that the case involved minor damages and subsequently advised that it had been tentatively settled and finally stated that it had been settled. Therefore, there was never any reason for appellee to do anything other than to make inquiry from time to time as to the status of the litigation and certainly there was no reason for it to make any further inquiry after being notified on May 28, 1965, that the case had been settled.

Byrd Pollard testified without objection as follows:

"Upon receipt of that information on May 28, 1965, the file was placed in a basket for the purpose of closing it out. If I had received information it was not closed and was to proceed to trial, the file would have been referred to Mr. Goheen, the Vice President in Charge of Claims of Reserve, for the purpose of pretrial review. I would also have made inquiry as to demands, injuries, out of pocket expenses of this situation and all information pertaining to the trial itself, evidence to be presented in a settlement. This would have been followed all the way through. I was not advised at all about the trial. The next information coming to me was a letter in July advising that the case had been tried and had resulted in a verdict."

The actions of appellant prevented appellee from demonstrating how far it would have gone to protect itself in the way of settlement negotiations, pre-trial preparation, and trial preparation had it known the case was going to trial, but from the company policies outlined by Pollard and by logical reasoning we can assume that it would not have let the matter in effect go by default on its part.

Appellant argues that appellee should have been in contact with the attorney for the primary carrier for information and settlement possibilities. However, we point out that this attorney was retained by the primary carrier and not by appellee and never once was any information given to appellee that the case could not be settled within the primary limits, so there was no reason for it to contact anyone except its insured to keep informed of the developments. We further point out that the cooperation clause under consideration provides that the insured shall cooperate, not the primary carrier.

Bob James testified that he handled claims for the appellant and that they had in the neighborhood of 100 accidents a year, so he was no novice in handling claims of this nature and dealing with the insurance companies. Despite his assurance and promise to keep appellee advised, there is nothing in the record to disclose why he misled appellee to its prejudice.

Affirmed.

BYRD, J., disqualified.

JONES, J., dissents.

J. FRED JONES, Justice, dissenting. I do not agree with the majority view in this case. It is my view that when the Reserve Insurance Company was advised that suit had been filed for an amount, far in excess of the primary coverage, it elected to depend entirely on the primary insurance carrier to bear the expense of defending the suit in protection of its own $10,000.00 limits,

and thereby took the calculated risk of paying the excess of any judgment over $10,000.00 This is exactly what appellee had contracted to do; it could be required to do no more and had no right, under its contract with appellant, to do anything less.

Appellee had written notice from the appellant that suit for $25,000.00 had been filed, and that the primary carrier was defending the lawsuit. Appellee had subsequent written notice that the case was set for trial on July 8, 1965. Appellee did nothing, and was required to do nothing under its contract, until it was notified that judgment for $16,000.00 had been rendered on July 8, 1965, at which time it was called upon to pay the excess amount of $6,000.00. Appellee then contended that it had been advised in a telephone conversation with appellant's assistant manager prior to July 8, 1965, that the case had been settled within the policy limits of a primary liability insurance contract between the appellant and another company, and appellee refused payment on the grounds that appellant had failed to render the cooperation required under the provisions of the primary policy which provisions were adopted by reference, in the policy issued by appellee.

Appellant denied that it had advised appellee that settlement had been made, but appellee was permitted to fortify the testimony of its claims superintendent on this point with a notation the superintendent says he made in the lower right hand corner of an entry sheet at the time he says he obtained the information by phone.

Appellant was not required, under its policy contract with appellee, or with the prime insurance carrier, to keep appellee advised of the progress of the negotiations toward settlement; it is usually the other way around. As a general rule and practical matter, when an insurance carrier is notified of a claim made or lawsuit filed against its insured, it takes over from there, and keeps the *insured* advised of the progress made toward settlement.

It is my view that the appellee's evidence in this case loses its substantial qualities when measured by the logic, or lack of it, in the proposition that an assured would pay premiums on an insurance policy for protection against the hazards of a lawsuit, and then advise its insurance carrier that a lawsuit had been settled when in fact it had not.

I fail to see wherein the appellee was prejudiced in any event. Appellee's superintendent testified to the effect that upon receipt of advice that the case had been settled, the file was placed in a basket for the purpose of being closed out, and that had he not been so advised, the file would have been referred to the vice-president in charge of claims for the purpose of pre-trial review. It is my opinion that this is not the kind of service appellant had paid for under its policy. Appellee could have referred the file to its vice-president on April 22, 1965, when it was notified by *letter* that the trial was set for July 8, if it considered this procedure of any importance under the policy. No liability accrued to appellee until judgment was entered in this case, and as I view it, the policy was written for the protection of the appellant and not for the protection of the appellee.

I would reverse the decision of the trial court and direct judgment against the appellee for $6,000.00.