2 Ill. App.3d 768 (1972)
277 N.E.2d 536
STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff-Appellant,
v.
FIRST NATIONAL BANK AND TRUST COMPANY OF PEKIN et al., Defendants-Appellees.
No. 71-15.
Illinois Appellate Court  Third District.
January 4, 1972.
*769 Davis, Morgan & Witherell, of Peoria, (John F. Dolan, of counsel,) for appellant.
Bartley, Hession & Palmer and Moehle, Moehle, Reardon, Sincock & Associates, both of Peoria, (David A. Dvorak, of counsel,) for appellees.
Judgment affirmed.
Mr. JUSTICE DIXON delivered the opinion of the court:
This is an appeal from a declaratory judgment requiring the plaintiff, State Farm Fire and Casualty Company, to defend two lawsuits brought *770 against its insured, Nancy J. Ehrett. The issue is whether State Farm has been relieved of its obligation to defend those lawsuits by a breach of the co-operation clause in Mrs. Ehrett's policy.
From the record it appears that on February 21, 1968, at about 1:40 in the morning, Mrs. Ehrett was driving her automobile east on Route 8 in East Peoria, Illinois, at a speed of about 40 miles per hour, and another automobile, driven by Stanley Leland, was going west. Mrs. Ehrett looked down to locate a cigarette in her purse and did not notice the other car as it approached. The cars collided. Mr. Ehrett was hospitalized, and Mr. Leland was killed.
There were no witnesses to the collision. Mrs. Ehrett afterwards suffered from amnesia and had no recollection of any details of the accident. Mr. Leland's body was found to have a blood alcohol level raising the presumption that he was intoxicated. Mrs. Ehrett had been observed drinking for an extended time before the accident. Most of the debris from Mr. Leland's car had settled around it where it came to rest in the westbound lane. A corner's jury concluded that Mrs. Ehrett's car had crossed into the opposite lane and had caused the collision.
Later in the morning on the date of the accident, Wilda Alexander, a good friend of Mrs. Ehrett and the owner of the Cooler Tap, where Mrs. Ehrett had been drinking, visited her in her hospital room. Mrs. Alexander asked Mrs. Ehrett to say she was not at the Cooler Tap the preceding evening, in order to protect Mrs. Alexander from dram shop litigation. The two of them fabricated a story about watching a movie together on television at Mrs. Alexander's house. Thereafter on a number of occasions Mrs. Ehrett stated that she did not have a drink after 9:00 or 9:30 in the evening before the accident, and had consumed only two drinks earlier, a beer at about 4:00 P.M. and a shot of whiskey at about 9:00 P.M.
The next day, February 22, 1968, Mrs. Ehrett was visited by a claims adjuster for State Farm, and she gave him her fabricated story. Before the interview he had read a newspaper account of the accident, reporting that Mrs. Ehrett had said someone else was driving her car. He therefore had her sign a request for claim service and non-waiver of rights, wherein she agreed that State Farm would not waive any of its rights by undertaking the investigation and defense of any claims arising out of the accident. He explained that this was necessary because of the question as to the identity of the driver which was raised by the newspaper article. State Farm then procured counsel for Mrs. Ehrett.
At the inquest on February 29, 1968, there was testimony from two persons who had seen Mrs. Ehrett drinking and dancing at the Cooler Tap before the accident. Mrs. Ehrett was there represented by an attorney employed by State Farm, who later summarized the proceedings for State *771 Farm. On March 4, 1968, an attorney acting for the family of Stanley Leland called the State Farm claims adjuster and informed him that he had six witnesses who would say that Mrs. Ehrett had been drinking almost constantly during the afternoon and evening of February 20, 1968, at the Cooler Tap and had appeared to be intoxicated. State Farm did not at that time obtain from him the names of his witnesses, nor mention them to Mrs. Ehrett. Subsequently two phone calls were made to his office but there was no answer, and no further efforts were made by State Farm to identify and question the six witnesses.
On March 27, 1968, the claims adjuster submitted a report to State Farm that if the testimony concerning physical evidence at the accident scene should hold up, State Farm might have no defense possibilities with regard to legal liability of Mrs. Ehrett. He added that there appeared to be a strong basis for considering denial of coverage if it could be substantiated that Mrs. Ehrett had misrepresented facts concerning her activities prior to the accident.
The administrator of the estate of Stanley Leland brought a wrongful death action against Mrs. Ehrett, and summons was served on her August 20, 1968. A guardian for minors claiming an interest in the automobile Mr. Leland had been driving brought a property damage action against Mrs. Ehrett, and summons was delivered to her by mail October 3, 1968. State Farm was advised of the two suits on October 28, 1968, when Mrs. Ehrett brought the summonses to its office. She explained her tardiness by saying that at first she thought the wrongful death action was against two taverns and not her, but the second summons directed her to appear in court and so she decided she had to do something about the papers. At that time she executed another non-waiver agreement, being told that it was necessary because of her failure to forward the summonses promptly. Her having given a false story to conceal her drinking prior to the accident was not mentioned as another reason it was wanted.
On December 19, 1968, when the deposition of Mrs. Ehrett was about to be taken, the attorney employed by State Farm to represent her explained to her that from information obtained by the attorney representing Mr. Leland's family it appeared that she had not told the truth about her activities preceding the accident. He told her that if she had made false statements, her coverage under her policy with State Farm had been jeopardized, and that if she changed her story, her coverage would be further jeopardized, but he recommended that she tell the truth. She then admitted that her previous accounts were false, that she had been drinking, and that she and Mrs. Alexander had conspired to give a false account in order to foreclose dram shop claims against Mrs. Alexander.
*772 Although State Farm learned about the witnesses to Mrs. Ehrett's heavy drinking early in March of 1968, it did not challenge her story at any time during the remainder of the year. In April and May of 1968 the adjuster attempted to take three additional statements from Mrs. Ehrett by telephone, but his recording equipment was not working properly. On October 28 and November 2 he interviewed her again and obtained two more statements from her. On none of these occasions did he tell Mrs. Ehrett that there were Allegedly six witnesses to her heavy drinking before the accident, as her attorney told her on December 19 when she recanted. Similarly, in a letter from State Farm's claims superintendent to Mrs. Ehrett dated November 4, 1968, she was informed that State Farm reserved the right to deny coverage by reason of her not forwarding the summonses promptly and by reason of evidence of her giving false or conflicting information as to who was driving her car at the time of the accident, but no specific mention was made of her having possibly falsified her story of her activities prior to the accident. The claims superintendent explained at the trial that prior to December 19 there was nothing definite in State Farm's file to indicate which of the two stories, that given by Mrs. Ehrett and Mrs. Alexander or that of the six witnesses, the correct.
The decision of the trial court in favor of Mrs. Ehrett and against State Farm was explained in a letter to the attorneys as follows: Mrs. Ehrett's breaches of the co-operation clause in her policy were technical and inconsequential; there was no breach material to any liability defense which could properly have been presented by her insurer on her behalf; and even if the admittedly false statements were a material breach, State Farm's failure to make a proper and diligent investigation of the facts concerning its insured's whereabouts and drinking after having the question brought to its attention amounted to a waiver.
 1-3 The burden of proof is on the insurance company if it seeks to establish breach of a co-operation clause. (Cuttone v. Peters, 67 Ill. App.2d 1, 4.) The question of co-operation involves not only the good faith of the insured but the good faith of the insurer as well. (Ray v. Johnson, 81 Ill. App.2d 456, 459; Gregory v. Highway Ins. Co. 24 Ill. App.2d 285, 298.) It is a question of fact, and the determination of the trial court will not be reversed unless manifestly against the weight of the evidence. (Gianinni v. Bluthart (App.Ct. 1971), 270 N.E.2d 480, 486.) We believe the evidence supports the determination of the trial court.
 4, 5 As stated in Allstate Ins. Co. v. Keller, 17 Ill. App.2d 44, 48, "It is generally conceded that the failure to co-operate must be material to the liability of the insured." Misrepresentations without relevancy to the question of liability are not a breach of the co-operation clause. (8 Blashfield, *773 Automobile Law & Practice § 342.13.) A technical or inconsequential lack of co-operation or misstatement to the insurer is immaterial. 7 Am.Jur.2d, Automobile Insurance Secs. 176, 178.
In this case the insured, Mrs. Ehrett, admitted that just before the accident she was looking down into her purse to find her cigarettes, and did not see the other car until the collision occurred; there were no eyewitnesses; the debris from the accident was in the lane of the oncoming car; and Mrs. Ehrett had amnesia following the accident and could not remember anything more regarding it. The trial judge evidently felt that if she had crossed the road and had driven headlong into the path of another car while she was looking down into her purse rather than out the front window, her earlier drinking had nothing to do with the question of her liability; her drinking might have contributed to her being so foolish as to be looking down rather than ahead, but the fact of her looking down was not in dispute; and her prevarication had no bearing on her usefulness as a witness if she had amnesia. We cannot say that the trial judge was manifestly in error in his conclusion that there was no failure to co-operate which could be material to liability but only an inconsequential lack of co-operation.
 6-9 Furthermore, false statements seasonably corrected are not considered a breach of the co-operation clause. (Prudence Mut. Cas. Co. v. Dunn, 30 Ill. App.2d 469; 34 ALR2d 267.) State Farm had information within two weeks of the accident that six witnesses would contradict Mrs. Ehrett's version of events preceding it. As soon as her attorney mentioned the six witnesses to her, she recanted and told the truth. State Farm could have accomplished this just as readily, it would seem, as her attorney, and just as soon as it chose to do so. It is evident from communications within the company that State Farm considered it to be likely that Mrs. Ehrett's original story was false and the version of the six witnesses was correct, though it did not make a prompt and thorough investigation to be sure of this. Yet the six witnesses were not mentioned while any of the numerous statements were being taken from Mrs. Ehrett; and fabrication of a story regarding her activities prior to the accident was not spelled out in any papers submitted to her for signature or sent to her by mail. State Farm did not give any clear indication to Mrs. Ehrett that it regarded her fabrication as of any importance. The failure of an insurer to inform the insured promptly of its intention to deny liability, upon discovering facts indicating a breach of the co-operation clause by the insured, constitutes a waiver of the breach. (Krutsinger v. Illinois Cas. Co., 10 Ill.2d 518, 526; Madison County Mut. Automobile Ins. Co. v. Slecka, 29 Ill. App.2d 389, 394; Allstate Ins. Co. v. Keller, 17 Ill. App.2d 44, 50.) The facts here were soon knowable, if not known, with use of reasonable diligence. Furthermore, *774 communications to the insured must be sufficiently clear. (Farmers Automobile Ins. Ass'n. v. Pursley (Ill. App. 1971), 267 N.E.2d 734, 737.) Therefore, if it were assumed that Mrs. Ehrett's false account could amount to a material breach, there is support in the record for a finding that State Farm is estopped to maintain that her retraction was not timely, or that State Farm waived the defense of lack of co-operation. Accordingly we find no error in the trial court's determination that the evidence showed a waiver.
 10 The lower court did not comment on Mrs. Ehrett's tardiness in passing on the summonses to State Farm. What is a reasonable time for this depends on the circumstances. (7 Am.Jur.2d, Auto Insurance Sec. 186.) The papers were turned over in time to avoid a default, and no harm resulted from the delay. We do not find State Farm to be released from its liability on this account.
Judgment affirmed.
ALLOY, P.J., and SCOTT, J., concur.