M.F.A. MUTUAL INSURANCE Co., Plaintiff-Appellant, *v.* GEORGE D. CHEEK *et al.*, Defendants-Appellees.

(No. 74-93; ▮▮▮▮▮▮▮▮▮▮)

Fifth District—December 19, 1975.

Cornelius Thomas Ducey, Jr., of Belleville, for appellant.

Crowder & Associates, Ltd., of Columbia (Thomas H. Kuergeleis, of counsel), for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

M.F.A. Mutual Insurance Company appeals from a judgment of the circuit court of Monroe County dismissing its complaint for a declaratory judgment against Harold Miller and Marie Miller that an automobile insurance policy sold to George Cheek was void because of a breach of the cooperation clause in the policy by Cheek, who told M.F.A. that he was driving his car when it struck Harold Miller, a pedestrian, and then later told M.F.A. that William Valleroy was driving.

The stipulated facts disclosed that M.F.A. Mutual Insurance Company (herein called M.F.A.) sold an automobile insurance policy to George Cheek which protected Cheek against liability incurred in an automobile accident up to the amount of $10,000 per accident victim. An omnibus clause in the policy protected any person who used Cheek's automobile with his permission. A cooperation clause was included in the policy which said:

"Assistance and Cooperation of the Insured—The Insured shall cooperate with the Company, disclosing all pertinent facts known or available to him, and upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization that may be liable to the insured with respect to which insurance is afforded under the policy."

The policy was to be in effect from September 11, 1971, to March 11, 1972. On November 12, 1971, Cheek was riding in his car with William Valleroy and two other persons when it struck and injured Harold Miller while he was crossing a street. Cheek informed the police officer who investigated the accident that he had been driving when Miller was injured, and that evening Cheek called an M.F.A. representative on the telephone and said that he had been driving at the time of the accident. On the following day, Cheek went to the representative's office and completed a form in which he stated that he had been the driver of the automobile. On November 16, 1971, an M.F.A. employee visited Cheek, Valleroy, and the two other persons who had been in the car. All of them said that Cheek had been driving.

Miller filed a complaint against Cheek in the circuit court of Monroe County on June 7, 1972. The complaint alleged that Cheek's negligence had caused Miller's injuries, and prayed for $50,000 damages from Cheek. Marie Miller, the wife of Harold Miller, also asked for $25,000 damages

from Cheek for the loss of her husband's services. Because Harold Miller and Marie Miller occupy the same position with respect to M.F.A., only Harold Miller will be referred to below for the sake of convenience.

Cheek was served with a summons and a copy of Miller's complaint on June 13, 1972. On the next day Cheek went to an M.F.A. office and told a supervisory employee that he had not been driving the automobile at the time of the accident, and that William Valleroy actually had been driving.

M.F.A. promptly sent Cheek a letter disclaiming its liability on the policy on the ground that Cheek had breached the cooperation clause of the policy by withholding from M.F.A. pertinent information about the accident. M.F.A. filed a complaint in the circuit court of Monroe County requesting a declaratory judgment against Cheek and Miller that the policy was void because of a breach of the cooperation clause. Cheek did not make an appearance in this action, and a default judgment was entered against him. M.F.A. then added Valleroy as a defendant. Valleroy did not appear, and a default judgment was also entered against him.

After a trial in the action for a declaratory judgment, the circuit court held that "all issues presented herein are found in favor of the defendants and against the plaintiff," and dismissed M.F.A.'s complaint.

M.F.A. contends (1) that the default judgments against Cheek and Valleroy extinguished M.F.A.'s liability on the policy and precluded Miller from recovering damages from M.F.A., (2) that a breach of the policy's cooperation clause occurred which voided the policy, and (3) that the circuit court should have entered an order that declared the rights of the parties instead of an order that dismissed the complaint.

■■ The statement has often appeared in Illinois decisions that an accident victim cannot recover from an insurer on a liability insurance policy unless the insured could recover if he were to sue the insurer. (See, *e.g.*, *Zitnik v. Burik*, 395 Ill. 182, 69 N.E.2d 888 (1946); *Firebaugh v. Jumes*, 341 Ill.App. 1, 92 N.E.2d 790 (1950).) This simply means that an insurer may assert against an accident victim all the substantive defenses based upon the terms of the policy that the insurer could assert against the insured. The statement does not mean, however, that a procedural misstep by the insured which terminates his rights against the insurer nullifies the rights of an accident victim against the insurer.

■■ An accident victim must be given a chance to litigate the question of the validity of a liability insurance policy before his interest in the insurance can be terminated. (*Fourniotis v. Woodward*, 63 Ill.App.2d 79, 211 N.E.2d 571 (1965); *Sobina v. Busby*, 62 Ill.App.2d 1, 210 N.E.2d 769 (1965).) If an accident victim declines an opportunity to litigate this matter in a declaratory judgment proceeding brought by an insurer,

he may be deprived of his interest in the insurance without being given another opportunity to be heard. (*Williams v. Madison County Mutual Automobile Insurance Co.*, 40 Ill.2d 404, 240 N.E.2d 602 (1968).) The accident victim must nevertheless be given at least one opportunity to be heard on the question of the policy's validity. Because Miller was entitled to an opportunity to be heard, the default judgments entered against Cheek and Valleroy did not preclude Miller from recovering from M.F.A.

Because an insured's breach of the cooperation clause is a substantive defense based upon the terms of a liability insurance policy, an insurer may urge this defense against an accident victim. (*Schneider v. Autoist Mutual Insurance Co.*, 346 Ill. 137, 178 N.E. 466 (1931).) Moreover, if William Valleroy were the driver of the automobile, he was a permissive user who was insured by the omnibus clause in Cheek's policy, and his cooperation with M.F.A. was a condition upon M.F.A.'s duty to pay on the policy. (*Zitnik v. Burik.*) M.F.A. could, therefore, properly argue that a significant breach of the cooperation clause by Cheek or Valleroy would preclude Miller from recovering from M.F.A.

■■ The question of when an insured's breach of the cooperation clause in a liability policy will be regarded as sufficiently serious to void the policy has caused widespread dispute among the jurisdictions in the United States. There is agreement that trivial instances of uncooperative conduct are not enough to release an insurer of its obligation on the policy. (See *Allstate Insurance Co. v. Keller*, 17 Ill.App.2d 44, 149 N.E.2d 482 (1958); Comment, *The Cooperation Clause in Automobile Liability Insurance Policies*, 51 Marq. L. Rev. 434 (1968).) Two different criteria, however, are used by the various States for determining whether a significant breach of the cooperation clause has occurred. A minority of the States holds that a policy is abrogated by an insured's substantial breach of the cooperation clause which is material to the insurer's liability.[1] The great majority of States that have considered the question

---

[1] Ten States use the substantial and material breach standard.

Alabama:
    *Alabama Farm Bureau Mutual Casualty Insurance Co. v. Mills*, 271 Ala. 192, 123 So.2d 138 (1960).

Connecticut:
    *Curran v. Connecticut Indemnity Co.*, 127 Conn. 692, 20 A.2d 87 (1941).

Kentucky:
    *State Farm Mutual Automobile Insurance Co. v. Jacobs*, 409 S.W.2d 523 (Ky. 1966); *Travelers Ins. Co. v. Boyd*, 312 Ky. 527, 228 S.W.2d 421 (1949).

Massachusetts:
    *Imperiali v. Pica*, 338 Mass. 494, 156 N.E.2d 44 (1959).

New Hampshire:
    *Employers' Mutual Cas. Co. v. Nelson*, 109 N.H. 6, 241 A.2d 207 (1968); *Glens Falls Indemnity Co. v. Keliher*, 88 N.H. 253, 187 A. 473 (1936).

holds that an insurer must show that it has been prejudiced by the insured's breach of the cooperation clause before it will be allowed to escape its duties on the policy.[2] The distinction between these criteria

New Jersey:
*Kindervater v. Motorists Casualty Insurance Co.*, 120 N.J.L. 373, 199 A. 606 (1938).
New York:
*Coleman v. New Amsterdam Casualty Co.*, 247 N.Y. 271, 160 N.E. 367 (1928).
Ohio:
*Luntz v. Stern*, 135 Ohio St. 225, 20 N.E.2d 241 (1939).
Tennessee:
*Pennsylvania Insurance Co. v. Horner*, 198 Tenn. 445, 281 S.W.2d 44 (1955); *Goodner v. Occidental Fire & Casualty Co.*, 59 Tenn. App. 317, 440 S.W.2d 614 (1968).
Virginia:
*State Farm Mut. Automobile Ins. Co. v. Arghyris*, 189 Va. 913, 55 S.E.2d 16 (1949).
[2] Twenty-four States use the prejudice standard.
Arizona:
*Carpenter v. Superior Court*, 101 Ariz. 565, 422 P.2d 129 (1966); *Jenkins v. Mayflower Insurance Exchange*, 93 Ariz. 287, 380 P.2d 145 (1963); *State Farm Mutual Automobile Insurance Co. v. Thompson*, 372 F.2d 256 (9th Cir. 1967).
California:
*Campbell v. Allstate Insurance Co.*, 60 Cal.2d 303, 384 P.2d 155, 32 Cal. Rptr. 827 (1963).
Colorado:
*Brooks v. Haggard*, 481 P.2d 131 (Colo. App. 1970).
Florida:
*Peerless Insurance Co. v. Sheehan*, 194 So.2d 285 (Fla.App. 1967).
Georgia:
*National Union Fire Insurance Co. v. Carmical*, 99 Ga.App. 98, 107 S.E. 2d 700 (1959).
Idaho:
*Leach v. Farmers' Auto Interinsurance Exchange*, 70 Idaho 156, 213 P.2d 920 (1950).
Indiana:
*Motorists Mutual Insurance Co. v. Johnson*, 139 Ind.App. 622, 218 N.E.2d 712 (1966).
Iowa:
*Glade v. General Mutual Insurance Ass'n*, 216 Iowa 622, 246 N.W. 794 (1933).
Kansas:
*Jameson v. Farmers Mutual Automobile Insurance Co.*, 181 Kan. 120, 309 P.2d 394 (1957).
Louisiana:
*Freyou v. Marquette Casualty Co.*, 149 So.2d 697 (La.App. 1963).
Maine:
*Camire v. Commercial Insurance Co.*, 160 Me. 112, 198 A.2d 168 (1964); *Medico v. Employers Liability Assurance Corp.*, 132 Me. 422, 172 A. 1 (1934).
Maryland:
Md. Ann. Code art. 48A, § 482 (1972); *Warren v. Hardware Dealers' Mutual Fire Insurance Co.*, 244 Md. 471, 224 A.2d 271 (1966).

is that the substantial and material standard does not, and the prejudice standard does, require the insurer to prove that it has been harmed by the insured's uncooperative conduct. Of the two standards, therefore, the prejudice standard is more favorable to insured persons and to accident victims.

What are the particular merits of these different criteria? The use of the substantial and material breach standard is ordinarily based on the argument that a liability insurance policy is a private contract between an insured and an insurer, and that the contractual expectations of the parties should be protected by a strict enforcement of the requirement

Michigan:
   *Leach v. Fisher,* 345 Mich. 65, 74 N.W.2d 881 (1956).
Minnesota:
   *White v. Boulton,* 259 Minn. 325, 107 N.W.2d 370 (1961); *Juvland v. Plaisance,* 255 Minn. 262, 96 N.W.2d 537 (1959).
Nebraska:
   *Pupkes v. Sailors,* 183 Neb. 784, 164 N.W.2d 441 (1969).
North Carolina:
   *MacClure v. Accident & Casualty Insurance Co.,* 229 N.C. 305, 49 S.E.2d 742 (1948).
Pennsylvania:
   *Cameron v. Berger,* 336 Pa. 229, 7 A.2d 293 (1939).
South Carolina:
   *Crook v. State Farm Mutual Automobile Insurance Co.,* 235 S.C. 452, 112 S.E.2d 241 (1960).
Texas:
   *Frazier v. Glens Falls Indemnity Co.,* 278 S.W.2d 388 (Tex. Civ. App. 1955).
Utah:
   *Oberhansly v. Travelers Insurance Co.,* 5 Utah 2d 15, 295 P.2d 1093 (1956).
Vermont:
   *Francis v. London Guaranty & Accident Co.,* 100 Vt. 425, 138 A. 780 (1927).
Washington:
   *Oregon Auto Insurance Co. v. Salzberg,* 11 Wash. App. 666, 524 P.2d 461 (1974).
West Virginia:
   *Marcum v. State Automobile Mut. Ins. Co.,* 134 W.Va. 144, 59 S.E.2d 433 (1950).
Wisconsin:
   *Foote v. Douglas County,* 29 Wis.2d 602, 139 N.W.2d 628 (1966); *Kurz v. Collins,* 6 Wis.2d 538, 95 N.W.2d 365 (1959).

Three States have considered the question, but have not chosen between the standards.
   Arkansas:
      *Black & White, Inc. v. Reserve Insurance Co.,* 242 Ark. 573, 414 S.W.2d 369 (1967).
   Missouri:
      *Quisenberry v. Kartsonis,* 297 S.W.2d 450 (Mo. 1956).
   Oregon:
      *State Farm Mutual Automobile Insurance Co. v. Farmers Insurance Exchange,* 238 Ore. 285, 393 P.2d 768 (1964).

of cooperation as a condition precedent to the insurer's duty to pay. (See, e.g., *Coleman v. New Amsterdam Casualty Co.*, 247 N.Y. 271, 160 N.E. 367 (opinion by Cardozo, J., 1928).) Two criticisms may be leveled at this argument. Hardly any of the conditions in modern liability insurance policies, especially automobile insurance policies, are the product of meaningful, private bargaining. The most that an insured can bargain for is the monetary amount of the coverage that is provided by his policy. Almost all the rest of the policy is dictated by the insurer to the insured. That this is true with respect to cooperation clauses is demonstrated by the fact that in recent decisions concerning cooperation clauses, the clauses set forth are often identical to the clause that is involved in this case. When, therefore, courts are presented with a tableau in which an insured who has paid his premiums, or an accident victim who has been grievously injured, is refused compensation by an insurer because of the insured's allegedly uncooperative behavior, the argument that the insurer must be preferred in order to protect the sanctity of private contracts seems flimsy.

The second criticism of the argument is that it ignores the growing body of common law which recognizes that liability insurance is not entirely a private matter between an insured and his insurer, and that an accident victim has an interest in the proceeds of liability insurance which cannot be easily disregarded. See *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill.2d 318, 121 N.E.2d 509 (1954).

In addition, the application and the effect of the substantial and material breach standard may be justly criticized. To apply the standard, a court must determine whether an insured's uncooperativeness has been material to the liability of the insurer without considering the question whether the insurer has been harmed by the insured's actions. This is illogical because the only reasonable way to decide whether an insured's conduct has been material to the insurer's liability is to decide whether the conduct has harmed the insurer's position.

The effect of the substantial and material breach criterion is undesirable because it gives the insurer a greater stake in the insured's noncooperation than in his cooperation. For example, when the tort liability of the insured to the accident victim is plain, and when the insured has no valid defenses against an action brought by the accident victim, the cooperation of the insured will help the insurer but little in negotiating a settlement or in defending the action. The noncooperation of the insured will likewise hurt the insurer but little under these circumstances. If the insured does exhibit uncooperative behavior, however, the insurer can seize upon this and argue, regardless of the harm actually suffered by the insurer, that the insured has committed a substantial and material

breach of the cooperation clause for which the insurer should be completely released from liability on the policy. Thus the substantial and material breach criterion encourages an insurer to use a cooperation clause for the wrong purpose; that is, for escaping liability rather than for securing the insured's cooperation.

The rule requiring a showing of prejudice, in contrast, prompts an insurer earnestly to seek the cooperation of the insured because the likelihood that the insurer will be able to show that uncooperative conduct of the insured has prejudiced its position decreases as the accident victim's case against the insured becomes clearer. Being unable to escape easily its duty to pay on the policy, especially when the accident victim's case is unquestionable, the insurer must realize that its self-interest is to obtain the cooperation of the insured. Thus the proper use of the cooperation clause by an insurer is furthered by the prejudice standard.

Another argument for the prejudice criterion is that it achieves a fairer adjustment of the rights of an accident victim and an insurer, favoring the individual who has been involuntarily injured in an accident over the company which has voluntarily sold a liability insurance policy and which has voluntarily received the payment of insurance premiums. This is harmonious with the modern view that an accident victim has a valid interest in the proceeds of liability insurance, and that liability insurance is not merely a private matter between an insured and an insurer. See *People ex rel. Terry v. Fisher*, 12 Ill.2d 231, 145 N.E.2d 588 (1957); *Simmon v. Iowa Mutual Casualty Co.*; *Sobina v. Busby*.

A last, general argument that can be made for the prejudice standard is that its wisdom is attested by its acceptance by the great majority of the jurisdictions in the United States.[3] Moreover, to the extent that there is a trend among the jurisdictions concerning the adoption of the substantial and material breach standard or the prejudice standard, the trend is toward adoption of the prejudice standard.[4]

The use of the prejudice criterion is consistent with the reluctance that the Illinois Supreme Court has shown in some cases to allow the conduct of an insured occurring after an accident to defeat the rights

---

[3] See Notes 1 and 2, *supra*.

[4] Three States have recently adopted the prejudice standard: California, Maryland, and Wisconsin. See *Campbell v. Allstate Ins. Co.*, 60 Cal.2d 303, 384 P.2d 155, 32 Cal.Rptr. 827 (1963); Md. Ann. Code art. 48A, § 482 (1972), and *Warren v. Hardware Dealers' Mut. Fire Ins. Co.*, 244 Md. 471, 224 A.2d 271 (1966); *Kurz v. Collins*, 6 Wis.2d 538, 95 N.W.2d 365 (1959). *Contra*, *Valladao v. Fireman's Fund Indemnity Co.*, 13 Cal.2d 322, 89 P.2d 643 (1939); *Watson v. United States Fidelity & Guaranty Co.*, 231 Md. 266, 189 A.2d 625 (1963); *Hunt v. Dollar*, 224 Wis. 48, 271 N.W. 405 (1937).

of the accident victim against the insurer. For example, *Scott v. Freeport Motor Casualty Co.*, 392 Ill. 332, 64 N.E.2d 542 (1945), as interpreted by *People ex rel. Terry v. Fisher*, construed section 388 of the Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 1000) "to be declarative of the public policy of this State to protect persons injured by the negligent operation of motor vehicles, and as conferring rights which cannot be defeated after the accident by the concerted action of the insured and the insurer." (12 Ill.2d 231, 237, 145 N.E.2d 588, 592.) In *Simmon v. Iowa Mutual Casualty Co.*, the Illinois Supreme Court held that an insured's failure to notify his insurer of an accident, as required by the notice clause of his policy, would not void the policy if the accident victim had given reasonable notice of the accident to the insurer.

The opinion in *Simmon* did contain the statement that "lack of prejudice may be a factor in determining the question of whether a reasonable notice was given in a particular case yet it is not a condition which will dispense with the requirement." (3 Ill.2d 318, 322, 121 N.E.2d 509, 511.) Thus, in Illinois, an insurer does not have to prove that it was prejudiced by an insured's breach of the notice clause in a policy in order to escape its duty to pay. This statement, however, cannot fairly be taken to mean that an insurer need not show prejudice in order to prove a significant breach of the cooperation clause in a policy. There is an important difference between a notice clause and a cooperation clause, which *Simmon* established. An accident victim may provide the notice that an insured neglects to give to his insurer, and may thereby prevent the insurer from escaping its duty to pay. An accident victim may not supply the cooperation that an insured fails to give his insurer, and is completely powerless to remedy the insured's breach of the cooperation clause. Requiring an insurer to prove that it was prejudiced by the uncooperative behavior of the insured before it will be allowed to avoid its duty to pay on the basis of a breach of the cooperation clause, is, therefore, in agreement with the concern expressed by the Illinois Supreme Court in *Simmon* for the rights of accident victims in the proceeds of liability insurance.

The sole obstacle to adoption of the prejudice standard by this court is a series of decisions by two Illinois courts of appeal: *Allstate Insurance Co. v. Keller*, 17 Ill.App.2d 44, 149 N.E.2d 482 (1st Dist. 1968); *Standard Mutual Insurance Co. v. Kinsolving*, 26 Ill.App.2d 180, 167 N.E.2d 241 (3d Dist. 1960); *Gallaway v. Schied*, 73 Ill.App.2d 116, 219 N.E.2d 718 (1st Dist. 1966); *Mertes v. Central Security Mutual Insurance Co.*, 103 Ill.App.2d 171, 242 N.E.2d 905 (3d Dist. 1968). These cases explicitly adopt the substantial and material breach standard. The later cases rest upon *Allstate Insurance Co. v. Keller*. Therefore, the soundness of the decision in *Allstate* must be considered.

The reasons set forth in *Allstate Insurance Co. v. Keller* for preferring the substantial and material breach standard were that use of the prejudice standard might compel insurers to raise liability insurance premiums to a prohibitively high level, and that the prejudice standard was "obsolete and impracticable." (17 Ill.App.2d 44, 49, 50, 149 N.E.2d 482, 484, 485.) Both reasons are shown to be without merit by the prevalence of the prejudice standard among the jurisdictions in the United States; that is, the great majority of jurisdictions would not adhere to the prejudice standard if it caused an unacceptable increase in liability insurance premiums, or if it seemed to be obsolete and impracticable.

Because *Allstate Insurance Co. v. Keller* and the cases based upon it are not sound, *Allstate* and the ensuing cases will not be followed. The requirement that an insurer must prove that it was prejudiced by an insured's uncooperative conduct in order to escape its duty to pay on the basis of a breach of a cooperation clause is wise, fair, and in accord with decisions of the Illinois Supreme Court; therefore, the prejudice criterion is adopted. Our position is supported by *State Farm Fire & Casualty Co. v. First National Bank & Trust Co.*, 2 Ill.App.3d 768, 277 N.E.2d 536 (3d Dist. 1972), which held that false statements reasonably corrected are not considered a breach of a cooperation clause.

■■ In the present case, M.F.A. was obligated on the policy regardless of whether Cheek or Valleroy was driving the automobile at the time of the accident, because Cheek was the named insured and Valleroy, as a permissive user of the automobile, was covered by the omnibus clause in the policy. After hearing the stipulated evidence, the trial court decided that Cheek's misstatement on the identity of the driver did not harm or prejudice M.F.A. There was an evidentiary basis for the trial court so to find and thus there was no breach of the cooperation clause sufficient to relieve M.F.A. of liability on the policy.

M.F.A.'s final argument is that the circuit court should have declared the rights of the parties instead of dismissing the complaint. This argument is correct.

■■ When an actual controversy is disclosed in a declaratory judgment proceeding which a circuit court adjudicates upon demurrer, motion, or otherwise, the circuit court should not dismiss the complaint, but should enter an order declaring the rights of the parties. (*Burgard v. Mascoutah Lumber Co.*, 6 Ill.App.2d 210, 127 N.E.2d 464 (1955).) With respect to a declaratory judgment proceeding that concerns the validity of a liability insurance policy, an actual controversy exists when the insurer is called upon to pay or to defend a claim in behalf of the insured. *Gibraltar Insurance Co. v. Varkalis*, 46 Ill.2d 481, 263 N.E.2d 823 (1970)..

In this case, M.F.A. was called upon to defend the insured when the

summons and complaint were served upon Cheek on June 13, 1972. An actual controversy concerning the validity of the policy therefore existed on that date. The circuit court adjudicated the controversy by the statement contained in the order dismissing the complaint that "all issues presented herein are found in favor of the defendants and against the plaintiff." Because there was an actual controversy which the circuit court adjudicated, the circuit court should have declared the rights of the parties instead of dismissing the complaint.

■■ This was a defect in form alone, which this court has the power to correct under Illinois Supreme Court Rule 366(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 366(a)). The order of the circuit court of Monroe County dismissing M.F.A.'s complaint is modified to an order declaring that the default judgments suffered by Cheek and Valleroy did not preclude Miller from recovering from M.F.A., and that there was no breach of the cooperation clause sufficient to relieve M.F.A. of liability on the policy.

The judgment of the circuit court of Monroe County is therefore affirmed as modified.

Judgment affirmed as modified.

JONES and CARTER, JJ., concur.