SIMONDS, by his Guardian ad Litem, Thomas S. Hornig, Plaintiff-Respondent, v. BOUTON, Defendant-Respondent: AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Supreme Court

*No. 76-163. Argued October 31, 1978.—*
*Decided January 30, 1979.*
(Also reported in 274 N.W.2d 666.)

For the appellant there was a brief and oral argument by *Thomas F. Berg* of Janesville.

For the respondent there was a brief by *Thomas S. Hornig* and *Brennan, Steil, Ryan, Basting & MacDougall, S.C.,* of Janesville, and oral argument by *Mr. Hornig.*

WILLIAM G. CALLOW, J.   In this personal injury case, the defendant American Family Mutual Insurance Company seeks to avoid liability to the plaintiff for damages arising out of an accident involving its insured, Terrance Bouton, on the ground that Bouton breached his contractual duty of cooperation with American Family by failing to appear at trial. We conclude this case turns on the question of whether or not the

court properly determined that Bouton's failure to appear at trial was not materially prejudicial to American Family.

The minor plaintiff, by his guardian *ad litem*, began this action on December 11, 1973, to recover damages from Bouton and American Family for injuries arising out of an auto-pedestrian accident occurring February 20, 1967. Shortly after the lawsuit was begun, Attorney John Wickhem, on behalf of American Family, wrote to Bouton advising him that the Wickhem law firm would represent him, asking him to cooperate and keep them advised of his address. Bouton met with Attorney Wickhem. On February 13, 1974, the plaintiff's counsel took Bouton's deposition. For the next year, Attorney Wickhem's firm was not in contact with Bouton. On February 27, 1975, Attorney James Meier, an associate of Wickhem, wrote to Bouton to tell him the trial was scheduled for March 25, 1975. The letter was returned as undeliverable, with no forwarding address on file. Meier learned that Bouton was residing in Gillette, Wyoming.

During the next ten months Meier made numerous telephone calls and wrote numerous letters to Bouton urging him to agree to return to Wisconsin for the trial. Bouton was evasive and Meier told him that American Family would bring an order to show cause why American Family should not be dismissed as a party defendant because of Bouton's failure to cooperate. Such an order was ultimately heard and denied by the court. Meier told Bouton he could be responsible for any resulting judgment in favor of the plaintiff. Meier advised Bouton American Family would pay all his expenses and a verified wage loss up to $25 per day. Bouton declined to attend the trial, stating that he was concerned about possible criminal prosecution by the Rock County District Attorney. Meier checked with the Rock County District

Attorney and learned there were no outstanding warrants against Bouton but that the authorities did want to question him about some matters they were investigating. Meier relayed this information to Bouton and sent him airplane tickets, but Bouton did not come to the trial.

At trial three eyewitnesses—the plaintiff, his brother, and James Sommerfeldt—gave testimony. There was little material difference in their accounts of the accident. The plaintiff, then eleven years of age, was walking home with his brother, age twelve, after visiting their mother at her place of employment. The brothers stopped at the northwest corner of an intersection to wait for the signal to change to "walk." It was a warm, clear February afternoon and had not yet begun to get dark. Sommerfeldt, who witnessed the accident from his van as he was stopped for his light near Bouton's car, testified that the boys were "horsing around." The plaintiff told his brother he would race him across the street. When the light changed, the plaintiff ran across the street in the crosswalk in the direction of the northeast corner with his head down. Sommerfeldt doubted that the plaintiff was in the crosswalk at the point of impact. He said Bouton's car was stopped at the northeast corner opposite the boys, and when the light changed, Bouton began to turn right across the plaintiff's path. Sommerfeldt testified that Bouton started at "a fast pace." The plaintiff ran into the left front part of Bouton's car and fell back. Bouton and plaintiff's brother carried him off the street. As a result of the impact, the plaintiff suffered a broken leg.

A police officer who investigated the accident testified that Bouton told him he stopped his car at the intersection for a red light as he was driving west. When the light changed, he looked at the intersection, saw no one, and made a right turn. His turn signal

was on. As he was crossing the east-west crosswalk, he noticed a movement to his left and hit the brake but not the clutch, killing the engine. As he hit the brake he felt something hit the car. He looked out and saw the plaintiff in the road near the driver's door. He saw the boy get up, take eight or nine steps, and sit down in the road. He then checked the boy's leg and carried him off the street.

The American Family adjuster who investigated the accident read from parts of the statement Bouton gave him on March 1, 1967. Bouton said he watched the pedestrians on both corners to his right. He started out "a little faster than average" because he had a standard transmission. When his front wheel was in the area of the far (north) crosswalk line, he saw a sudden movement to his left, immediately applied the brakes, killing the engine. He stopped about four feet north of the north crosswalk line. He said that the plaintiff was lying in the road about 2 feet beyond the crosswalk.

Bouton's adverse examination of February 13, 1974, was read into the record. There were no significant variances in his statements to the officer and the adjuster.

A private investigator hired by the plaintiff's lawyer testified to a brief conversation he had with Bouton in late June, 1971. Bouton said that he saw the boys, whom he recognized, leaving the corner as the light turned on an instant before, that the impact occurred with the left frontal portion around the bumper, and that Sommerfeldt had a clear view of the accident from his van.

The court did not give an instruction concerning an absent party and the record does not reflect that American Family requested one. The jury found both the plaintiff and Bouton causally negligent, attributing

75 percent of the negligence to Bouton, 25 percent to the plaintiff, and assessing damages of $5,000. Judgment on the verdict was entered in the amount of $3,750 against Bouton; and judgment was to be entered against American Family in the same amount if the court should rule after a hearing that Bouton did not breach the cooperation clause or that any such breach was not prejudicial to the insurance company.

On May 18 and 19, 1976, the question of breach of the cooperation clause was tried to a jury. Meier recounted his efforts to secure Bouton's attendance at trial. On May 19, 1976, the jury found that Bouton failed to cooperate in the defense of the action but that American Family did not exercise reasonable diligence in attempting to secure his presence at trial. The plaintiff moved for judgment on the verdict and defendant brought postconviction motions seeking judgment notwithstanding the verdict, changes in the answers to the special verdict, or a new trial. The court denied the defendant's motions and granted judgment for the plaintiff. In a supplemental decision of August 27, 1976, the court found that Bouton's failure to attend trial was not prejudicial to American Family. An amended judgment was entered on September 3, 1976, from which American Family appeals.

Because the legislature did not deal with the subject of cancellation of insurance for noncooperation until 1969, the case must be resolved on common law principles. This court has consistently viewed automobile liability insurance policies as more than indemnity contracts between insurer and insured; there is a strong public policy favoring compensation of injured third parties. *McDonnell v. Hestnes*, 47 Wis.2d 553, 558–59, 177 N.W.2d 845 (1970); *Stippich v. Morrison*, 12 Wis.2d 331, 336–37, 107 N.W.2d 125 (1961); *Kurz v. Colins*, 6 Wis.2d 538,

95 N.W.2d 365 (1959). Thus it is not enough for an insurance company to show a technical breach of the cooperation clause in order to avoid liability to a third party; the company must also prove that it was materially harmed or prejudiced by the breach. This court has adopted a two-step approach: (1) the question of breach of the cooperation clause is for the trier of fact, and (2) the question of materiality of the harm or prejudice is for the court. *McDonnell v. Hestnes, supra* at 559. Because we conclude that the trial court properly decided that American Family was not actually prejudiced by the absence of Bouton at trial, we need not reach the question of the propriety of the jury's finding that Bouton breached the cooperation clause of the insurance contract. The insurer must demonstrate actual prejudice, not merely the possibility of prejudice, arising from the breach. *Foote v. Douglas County,* 29 Wis.2d 602, 608, 139 N.W.2d 628 (1966).

American Family's claim that Bouton's absence was actually prejudicial is threefold: (1) His testimony was material and favorable to American Family; (2) His presence would have helped the company refute unanticipated testimony; (3) His absence had an intangible, harmful effect on the jury, possibly causing the jurors to speculate as to Bouton's absence.

While it is true that Bouton's testimony was material, there was eyewitness testimony from the plaintiff, his brother, and an observer. Material parts of Bouton's statements to the police officer and insurance adjuster were read to the jury. They contained no important differences from the other testimony as to the accident. This case is distinguishable from *Berry v. Truck Insurance Exchange,* 265 Or. 130, 508 P.2d 436 (1973), relied on by American Family. In that case the plaintiff alleged that Coffman backed out of a parking lot and hit the plaintiff's car as she was driving down

the street. In a statement, Coffman, who failed to appear at trial, said that he was "pulling up" to a stop sign when the plaintiff "rear ended" him. Coffman was the only favorable defense witness. Thus there was a material difference in the testimony. In this case the eyewitness accounts were not materially different from Bouton's statements or deposition. Though his testimony may have been material and favorable to the defense, his absence was not prejudicial for that reason alone, given the lack of substantial variance in the testimony, including his own.

The unanticipated testimony referred to by American Family alludes to the plaintiff's private investigator who testified that Bouton told him that he saw the boys leaving the corner as the light changed. While in his deposition he denied seeing the boys, he did say to the adjuster that he watched the pedestrians on both corners. Thus the investigator's testimony could not have been a surprise.

The appellant has not established a foundation for the claim that Bouton's absence may have had an intangible effect on the jury, causing the jurors to speculate as to the reason for Bouton's absence. No request appears in the record for a "missing party" instruction, nor is there an objection to the court's failure to give one. In light of the requirement of showing actual prejudice, American Family's conjecture as to what the jury may have speculated is not enough to support a conclusion of actual prejudice.

Because we conclude that American Family has failed to show any actual prejudice resulting from Bouton's failure to appear, we are not obliged to consider the question of whether or not American Family used reasonable diligence in its attempt to get Bouton to cooperate.

The plaintiff has moved for double costs because American Family has not printed in its appendix an abridgment of the testimony at the trial on liability and damages. The appendix was inadequate, and it was necessary to go directly to the record to determine whether, in view of the testimony adduced at the trial, Bouton's absence prejudiced American Family. It makes no difference that the respondent did not fully abridge the testimony in his appendix. Because this court has declared that failure to provide an adequate appendix as provided by statute shall result in the imposition of double costs, the respondent's motion for the allowance of double costs is granted. *See: Martin v. Martin,* 46 Wis.2d 218, 221, 174 N.W.2d 468 (1970).

*By the Court.*—Judgment affirmed.