ELVIN D. KROHN AND PHYLLIS J. KROHN, APPELLANTS AND
CROSS-APPELLEES, V. RANDY R. GARDNER, APPELLEE, AND FARM
BUREAU INSURANCE COMPANY OF NEBRASKA,
GARNISHEE-APPELLEE AND CROSS-APPELLANT.
471 N.W.2d 391

Filed June 28, 1991.   No. 89-119.

Dennis C. Magnuson, of Gast & Peters, for appellants.

John W. Iliff, of Gross & Welch, P.C., for garnishee-appellee.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Per Curiam.

Elvin D. and Phyllis J. Krohn appeal from an order of the district court for Douglas County which sustained a motion for summary judgment by Farm Bureau Insurance Company of Nebraska. The Krohns' garnishment proceedings in aid of execution against Farm Bureau were dismissed on the ground that the issue was res judicata.

The garnishment proceedings arose following an automobile accident on October 13, 1983, between the Krohns and Randy R. Gardner, who was driving a 1971 Mercury which belonged to his father. In the Madison County District Court, the Krohns obtained judgments against Gardner for $25,000 each.

Farm Bureau had issued an automobile liability insurance policy to Gardner's father, which policy was due to expire on October 24, 1983. On October 12, he applied to Farm Bureau to add the 1971 Mercury to the policy. Farm Bureau's underwriting manual provided that if an additional automobile was to be added to a policy within 30 days of its expiration, payment for the next premium period must accompany the application. A 10-day grace period after the expiration date was also provided, and during that period an insured could remit the payment for the renewal coverage.

Gardner's father included a check for the renewal of his policy with the application to add the Mercury on October 12. His check was twice returned for insufficient funds. Gardner's father then mailed a money order to Farm Bureau on November 3, and it was received on November 4.

Farm Bureau denied coverage on the 1971 Mercury following the accident, and Gardner brought a declaratory judgment action against the insurance company. The Pierce County District Court dismissed the action, which was tried on stipulated facts, finding that no coverage existed for the 1971 Mercury under the policy.

After the Krohns obtained judgments against Gardner in the

Madison County District Court, the judgments were transcribed to the Douglas County District Court, where the Krohns then filed garnishment proceedings against Farm Bureau. Farm Bureau's motion for summary judgment was sustained by the Douglas County District Court, which found that the issue of whether Farm Bureau provided coverage for the Mercury had been litigated and fully determined in the Pierce County District Court, so that the matter was res judicata. The Douglas County District Court also found that because Farm Bureau was not indebted to Gardner, it could not be indebted to the Krohns.

The Krohns assign as error the trial court's finding that (1) their legal rights in Gardner's liability insurance policy could be determined in a declaratory judgment action to which they were not parties and (2) the previous declaratory judgment between Farm Bureau and Gardner was res judicata in the Krohns' garnishment proceedings against Farm Bureau.

Farm Bureau has cross-appealed, asserting that the Douglas County District Court did not have subject matter jurisdiction over the garnishment actions because the judgments of the Madison County District Court cases were not transcribed to Douglas County. The record reflects the judgments against Gardner were transcribed in conjunction with the filing of the garnishment actions. The cross-appeal is dismissed.

Summary judgment is properly granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or as to the ultimate inferences deducible from such facts and that the moving party is entitled to judgment as a matter of law. *Millard v. Hyplains Dressed Beef*, 237 Neb. 907, 468 N.W.2d 124 (1991).

We note first that under Nebraska law, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Neb. Rev. Stat. § 25-21,159 (Reissue 1989). In this case, the only parties to the declaratory judgment action were Gardner and Farm Bureau. The Krohns were not included in the action, and their rights have been prejudiced by

the failure to be a party to that case.

Our case law makes it clear that "the statute authorizing a declaratory judgment is applicable only where all interested persons are made parties to the proceedings." *Shepoka v. Knopik*, 197 Neb. 651, 654, 250 N.W.2d 619, 621 (1977). Accord *Omaha Pub. Power Dist. v. Nuclear Elec. Ins. Ltd.*, 229 Neb. 740, 428 N.W.2d 895 (1988). In *Shepoka*, we reiterated that "indispensable parties to a suit are those who have such an interest in the controversy that the court cannot render a final decree without affecting their interests." *Shepoka, supra* at 655, 250 N.W.2d at 621, citing *Ohmart v. Dennis*, 188 Neb. 260, 196 N.W.2d 181 (1972). As judgment creditors, the Krohns "or any person injured by the assured obviously is an interested party in any and all proceedings which are held to determine or construe the validity of the insurer's liability under the policy." *Constant v. Pacific Nat'l Ins. Co.*, 84 N.J. Super. 211, 216-17, 201 A.2d 405, 408 (1964). The Krohns have an interest in the controversy between Gardner and his insurance company such that the final decree affected their interests. They were indispensable parties to the action between Gardner and Farm Bureau.

We disagree with the district court's finding that the Krohns are now barred by res judicata based on the lower court's holding in the *Gardner v. Farm Bureau* action. " 'The doctrine of issue preclusion recognizes that limits on litigation are desirable, but a person should not be denied a day in court unfairly.' " *Hickman v. Southwest Dairy Suppliers, Inc.*, 194 Neb. 17, 22, 230 N.W.2d 99, 103 (1975).

> "The basis of the doctrine is that the party to be affected, or someone with whom he is in privity, has litigated or has had an opportunity to litigate the same matter in a former action. . . . The law is clear that one is not estopped or barred by a prior adjudication if he was not a party to such action and does not stand in the relation of privy to one who was a party. . . ."

*Hickman, supra* at 27, 230 N.W.2d at 106.

> Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to a prior suit or as a privy; and,

where not so, that at least the presently asserted interest was adequately represented in the prior trial.

*Id*. at 28-29, 230 N.W.2d at 106. We do not find that the Krohns have had their day in court as far as determining their ability to collect on the judgments entered against Gardner. Gardner was able to file suit against the insurance company, and the Krohns were able to file suit against Gardner, but the Krohns have not been provided the opportunity to be heard in determining their rights as against Farm Bureau. We cannot allow an innocent injured third party to be foreclosed in this manner.

The Krohns are not in privity with Gardner because " ' "[p]rivity implies a relationship by succession or representation between the party to the second action and the party to the prior action in respect to the right adjudicated in the first action." . . .' " *Hickman, supra* at 24, 230 N.W.2d at 104. As we have noted, "for the purpose of issue preclusion, the mere fact that litigants in different cases are interested in the same question or desire to prove or disprove the same fact or set of facts is not a basis for privity between the litigants." *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 839, 458 N.W.2d 443, 458 (1990).

An Indiana appeals court has stated:

"A judgment determining, as between an automobile liability insurer and the insured or a person claiming to be insured, a question of coverage in favor of the insurer does not, as a matter of res judicata, preclude the injured person from litigating the question of coverage in a subsequent action or proceeding instituted by him against the insurer, since the injured person is not in privity with any of the parties in the former proceeding."

*United Farm Bureau Mut. Ins. Co. v. Wampler*, 406 N.E.2d 1195, 1197 (Ind. App. 1980).

If the action of the district court is allowed to stand, the Krohns will leave emptyhanded, even though another court found that they were entitled to $25,000 each as damages for the injuries sustained in the auto accident. To say it simply, that is not fair. We agree with the Illinois Appeals Court, which held that "[a]n accident victim must be given a chance to litigate the question of the validity of a liability insurance policy before his

interest in the insurance can be terminated." *M.F.A. Mutual Insurance Co. v. Cheek*, 34 Ill. App. 3d 209, 212, 340 N.E.2d 331, 334 (1975), *aff'd* 66 Ill. 2d 492, 363 N.E.2d 809 (1977). The court wrote, "an accident victim has a valid interest in the proceeds of liability insurance, and . . . liability insurance is not merely a private matter between an insured and an insurer." *M.F.A. Mutual Insurance Co., supra* at 217, 340 N.E.2d at 337.

A federal district court also has held that " 'upon the happening of an accident the injured third party acquired an interest in the policy that cannot be foreclosed by litigation or agreement between insurer and insured alone.' " *Atlantic City v. American Casualty Insurance Company*, 254 F. Supp. 396, 398 (D.N.J. 1966).

In Nebraska, motorists are required to carry liability insurance on automobiles under the Motor Vehicle Safety Responsibility Act, Neb. Rev. Stat. §§ 60-501 et seq. (Reissue 1988). It is a Class II misdemeanor for an individual to drive a vehicle without proof of financial responsibility. Neb. Rev. Stat. § 60-570 (Reissue 1988). As this court noted as long ago as 1952:

> The purpose of the Motor Vehicle Safety Responsibility Act is to protect the public on the highways against the operation of motor vehicles by financially irresponsible persons and thus is referable to the police power of the state. This power is inherent in every sovereignty and permits the enactment of laws, within constitutional limits, to promote the general welfare of its citizens. Therefore, in the interests of the public the state may make and enforce regulations reasonably calculated to promote care on the part of all who use its highways.

*Montgomery v. Blazek*, 161 Neb. 349, 354, 73 N.W.2d 402, 406 (1955).

One of the "regulations reasonably calculated to promote care" on the highways was passed by the Nebraska Legislature in 1985. It requires that proof of financial responsibility be provided before a car may be licensed. As Sen. Gerald Conway, the introducer, noted in the statement of intent for the bill:

> It is, however, only under extraordinary circumstances that such financial responsibility [as was previously

required] is examined for validity. As a result, large numbers of Nebraska drivers are operating their vehicles without any means of covering the cost of injuries and damage they may inflict in an accident. To obtain indemnification the injured parties must often resort to formal court action. This is often futile when the motorist at fault is without financial support.

Statement of Intent, L.B. 404, Committee on Public Works, 89th Leg., 1st Sess. (Feb. 21, 1985).

In floor debate, Senator Conway noted that the "very presence [of uninsured motorists] in our system and our roadways is creating an unbelievable financial and in many cases emotional hardship on many of those people who are conscientious to meet the current law . . . ." Floor Debate, L.B. 404, 89th Leg., 1st Sess. 2922 (Apr. 4, 1985). Sen. Peter Hoagland also supported the bill, stating that the requirement would mean a higher percentage of people are insured, which in turn meant that more people would have protection. "And that is the goal of the Legislature surely, the goal of society, the goal of an insurance system to have a greater number of people protected. That is what this bill is going to do." Floor Debate, L.B. 404, 89th Leg., 1st Sess. 4083 (Apr. 25, 1985).

We have noted that "[p]ublic policy of protecting the third party against loss caused by negligence of the financially irresponsible motorist is, however, especially strong. A policy defense good against the insured may be unavailing against the third party." *Smith v. Canal Ins. Co.*, 184 Neb. 866, 868, 173 N.W.2d 36, 37 (1969).

The Wisconsin Supreme Court noted that it has "consistently viewed automobile liability insurance policies as more than indemnity contracts between insurer and insured; there is a strong public policy favoring compensation of injured third parties." *Simonds v. Bouton*, 87 Wis. 2d 302, 307, 274 N.W.2d 666, 669 (1979).

We have held that the law regarding an uninsured motorist "was enacted for the benefit of the innocent victim of a financially irresponsible motorist, and is to be liberally construed to fully accomplish that purpose." *Herrera v. American Standard Ins. Co.*, 203 Neb. 477, 481, 279 N.W.2d

140, 143 (1979).

We cannot allow the Krohns to be deprived of an attempt to collect on the judgments which were entered to compensate them for their injuries. They must be given an opportunity for their day in court against the insurance company. We find that the trial court erred in granting summary judgment for the defendants, in finding that the Krohns' legal rights in Gardner's liability insurance policy could be determined in a declaratory judgment action to which they were not parties, and in finding that the declaratory judgment was res judicata to their claims against Farm Bureau. We reverse and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissenting.

There are several reasons why I believe the majority has reached an incorrect result in this case.

The issues in garnishment proceedings are framed by the application and answer. See Neb. Rev. Stat. § 25-1030 (Reissue 1989). In *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 300-01, 363 N.W.2d 362, 366 (1985), this court stated:

By the application the garnisher frames the issue: Does the garnishee owe a debt to the judgment debtor or hold property, funds, or credits of a judgment debtor? The answers of the garnishee and the controverted answers or factual allegations in the garnisher's application constitute the pleading for disposition of the liability issue under § 25-1030.

Farm Bureau Insurance Company of Nebraska, the garnishee, in its answers to the interrogatories, denied that the 1971 Mercury automobile involved in the accident was covered by the insurance policy to Randy Gardner's father because a judgment in the Pierce County District Court in a declaratory judgment action filed by Gardner had determined there was no coverage, and alleged that the issue was res judicata. In their applications for determination of garnishee liability, the Krohns alleged merely that Farm Bureau did provide coverage for the automobile involved in the accident on October 13, 1983. No factual allegations attacking the Pierce County District Court declaratory judgment were made by the Krohns.

The trial court in the garnishment proceedings found that the

issue of whether Farm Bureau provided insurance coverage for the 1971 Mercury had been litigated and fully determined in the Pierce County District Court; that that court had determined the policy did not provide coverage for the automobile in question; and that, accordingly, the matter was res judicata. The trial court further found that because Farm Bureau was not indebted to Gardner, it could not be indebted to the Krohns.

Even though Krohns' pleadings in the garnishment proceedings raised no issue in the trial court as to whether the judgment in the declaratory judgment action was binding on them, all of Krohns' rights regarding the subject matter of the previous litigation, the insurance policy, were derived through Gardner. The same evidence would determine both causes of action. Accordingly, in the garnishment proceedings in this court, the issue raised by the Krohns ought to be res judicata as to them.

There is a further reason why the judgment of the trial court should be affirmed. The trial court determined the action on the garnishee's motion for summary judgment.

A summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom and that the moving party is entitled to judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Reissue 1989); *Millard v. Hyplains Dressed Beef*, 237 Neb. 907, 468 N.W.2d 124 (1991). Since the party moving for summary judgment has the burden of showing that no genuine issue as to any material fact exists, that party must produce enough evidence to demonstrate his entitlement to a judgment if the evidence were to remain uncontroverted at a trial, after which the burden of producing contrary evidence shifts to the party opposing the motion. *Deutsche Credit Corp. v. Hi-Bo Farms, Inc.*, 224 Neb. 463, 398 N.W.2d 693 (1987).

The only issue before the trial court was whether the Farm Bureau policy provided coverage for the 1971 Mercury involved in the October 13, 1983, accident.

The depositions of Merlyn Kuhl and George Morrison show that the Gardner insurance policy with Farm Bureau was due to

expire on October 24, 1983. On October 12, 1983, Gardner's father made an application to add the 1971 Mercury to the policy.

Farm Bureau's underwriting procedures provided that if coverage for another vehicle was to be added to a policy within 30 days of the policy's expiration date, payment for the next premium period must be made with the application. The policy also provided a 10-day grace period after the expiration date, during which an insured could make the payment for the renewal coverage.

Gardner's father sent his check for the renewal of the policy with the application on October 12, 1983. However, his check was twice returned for insufficient funds. On November 4, 1983, 1 day after the 10-day grace period had expired, Farm Bureau received a money order from Gardner's father in the mail. Because the premium was not paid in time, there was no coverage under the policy for the 1971 Mercury on the date of the accident.

No evidence was presented at the hearing on the motion for summary judgment to controvert the fact that there was no coverage under the Farm Bureau insurance policy for the accident with the 1971 Mercury. Accordingly, Gardner had no coverage for the 1971 Mercury under the policy, and the Krohns had no rights against Farm Bureau.

The order sustaining Farm Bureau's motion for summary judgment was proper, and the judgment should have been affirmed.

HASTINGS, C.J., concurring in part, and in part dissenting.

I concur in that portion of the majority opinion dealing with the issue of res judicata. However, I join in the dissent of Judge Boslaugh to the extent that it suggests the record supports the conclusion that garnishee-appellee Farm Bureau met its burden of demonstrating that the uncontroverted facts showed that it was entitled to judgment as a matter of law and appellants failed in their burden of presenting evidence showing an issue of material fact which prevented a judgment for the garnishee-appellee as a matter of law. See *Mason State Bank v. Sekutera*, 236 Neb. 361, 461 N.W.2d 517 (1990). The injured

persons were parties to this litigation and had an opportunity to controvert Farm Bureau's prima facie case and failed to do so. It would seem that the trial court reached the right result for perhaps the wrong reason.

I am authorized to state that Judge Caporale joins in this concurrence and dissent.