MARJORIE OCASEK, Special Adm'r of the Estate of Lily Krass, Deceased, Plaintiff-Appellee, v. LAURA KRASS, Special Adm'r of the Estate of Albert Krass, Deceased, Defendant-Appellant.

First District (4th Division)   No. 86—0910

Opinion filed March 12, 1987.—Rehearing denied April 9, 1987.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini and Mayer Goldberg, of counsel), for appellant.

James E. Ocasek, of Robert J. Cooney & Associates, of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

On January 16, 1980, an airplane operated by Albert Krass crashed at the Lake County airport, killing Albert Krass and his wife Lily Krass. Plaintiff, Marjorie Ocasek, special administrator of the estate of Lily Krass, filed a wrongful-death action against defendant Laura Krass, special administrator of the estate of Albert Krass, alleging that Albert Krass' negligent operation of the airplane was the proximate cause of the fatal crash. The defendant answered, raising as an affirmative defense the exclusive-remedy provision of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(a)) on the grounds that Albert Krass was Lily Krass' employer and the crash occurred on their return from a business trip. The trial court granted the plaintiff's motion for summary judgment on the affirmative defense.

The record shows that Albert Krass was the general partner of a limited partnership doing business as Chilo Manufacturing and Plating Company, which manufactures metal forms for the lamp and shade industry. Lily Krass was a salaried employee of Chilo, and she and Albert Krass were the principal salespersons. On the date of the airplane crash, Lily and Albert were returning home from a trade show in Dallas, Texas. Although the plaintiff maintains on appeal that this was a combined business and pleasure trip, she stated in her motion to dismiss the defendant's affirmative defense that the crash occurred while Lily was "in the course and scope of her employment."

The record further reveals that Albert Krass was a licensed pilot and that he was the owner of the airplane. However, Chilo reimbursed him for the fuel used in the airplane when he flew it on company business. In her motion to dismiss the affirmative defenses, the plaintiff alleged that an insurance policy purchased by Albert Krass provided coverage for "liability for personal injury to any employee of the insured arising out of and in the course of his employment by the insured." The motion also contained an argument that the dual-capacity doctrine was applicable on the basis that Albert Krass was being sued in his capacity as airplane pilot rather than in his capacity as Lily Krass' employer.

The defendant contends on appeal that the plaintiff's lawsuit is barred by the exclusive-remedy provision of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(a)) and that the trial court's reliance on the dual-capacity doctrine was erroneous.

The Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138 *et seq.*) was enacted to abrogate the system of common law rights and liabilities which previously governed an injured employee's ability to recover against his employer. (*Sharp v. Gallagher* (1983), 95 Ill. 2d 322, 326, 447 N.E.2d 786, 787.) The policy of the Act is to provide certainty of remedy gained in return for limiting the liability of the employer. (95 Ill. 2d 322, 447 N.E.2d 786.) To effectuate this policy, the Act provides that "the statutory remedies under it shall serve as the employee's exclusive remedy if he sustains a compensable injury." (95 Ill. 2d 322, 326, 447 N.E.2d 786, 787; *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 317, 396 N.E.2d 524, 526.) Thus, section 5(a) of the Act states in pertinent part:

"No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act." Ill. Rev. Stat. 1985, ch. 48, par. 138.5(a).

Illinois courts have recognized a limited exception to the exclusive-remedy provision of the Act. This exception is known as the dual-capacity doctrine and provides that "an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer." (2A A. Larson, Workmen's Compensation sec. 72.81, at 14—112 (1986).) Professor Larson cautions, however, that a mere separate theory of liability against the same legal person as the employer is not a true basis for the dual-capacity doctrine. Rather, the doctrine requires a distinct separate legal *persona* so "completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." 2A A. Larson, Workmen's Compensation sec. 72.81, at 14—229 (1986).

In its decisions involving application of the dual-capacity doctrine, the Illinois Supreme Court has cited Professor Larson with approval in fashioning what appears to be a two-part test. First, as noted in *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 319, 396 N.E.2d 524, 527, the plaintiff attempting to establish a dual capacity must show that the second capacity "generates obligations unrelated to those flowing from the first, that of employer." Second, as the court stated in *Sharp v. Gallagher* (1983), 95 Ill. 2d 322, 328, 447 N.E.2d 786, 788, the plaintiff must show that the employer was act-

ing as a "distinct separate legal *persona.*"

Applying these principles to the case at bar, we find that the plaintiff has failed to meet either of the requirements necessary to avail herself of the dual-capacity doctrine. In attempting to establish that Albert Krass had a legal *persona* separate and distinct from his role as general partner in Chilo, the plaintiff argues that "Albert, as a pilot, was operating as an individual, with no connection to Chilo." In our view, the mere fact that the employer, as an individual, pilots an airplane, drives a car, or performs other such functions which impose upon him the duty to exercise due care, does not serve to endow him with a second legal *persona* completely independent from and unrelated to his status as an employer.

Nor has the plaintiff met the requirement of showing that Albert Krass' alleged second capacity as an airplane pilot generated obligations unrelated to those flowing from his capacity as employer. Rather, it appears that in undertaking to provide transportation for his employee on a company business trip, he had an obligation as employer to exercise due care. The plaintiff argues, however, that the appropriate test for determining whether this requirement was met is set forth in *Rosales v. Verson Allsteel Press Co.* (1976), 41 Ill. App. 3d 787, 790, 354 N.E.2d 553, 556, which states that the second capacity must be one that creates legal obligations on the part of the employer to the public in general and not just to its employees. Using this test, she argues that Albert Krass' duties as an airplane pilot ran to the public at large, including not only passengers but also other aircraft and persons on the ground.

The proposition stated in *Rosales* appears to have had its genesis in certain California cases, including *Douglas v. E. & J. Gallo Winery* (1977), 69 Cal. App. 3d 103, 137 Cal. Rptr. 797, and *Moreno v. Leslie's Pool Mart* (1980), 110 Cal. App. 3d 179, 167 Cal. Rptr. 747. These cases held that if an employer manufactures a product for the general public rather than for sole use in the employment setting, an employee injured by the product could bring a product liability action against the employer in its capacity as manufacturer. However, the great majority of American jurisdictions do not follow the reasoning of these cases and instead hold that an employer who is also the manufacturer of a product used in the work cannot be held liable in damages to his own employee on a theory of product liability. (2A A. Larson, Workmen's Compensation sec. 72.83, at 14—239 (1986); see *Schlenk v. Aerial Contractors, Inc.* (N.D. 1978), 268 N.W.2d 466; *Cohn v. Spinks Industries, Inc.* (Tex. Civ. App. 1980), 602 S.W.2d 102.) It is significant to note with respect to this issue that the dual-

capacity doctrine was legislatively abolished in California in August of 1982. (*Siva v. General Tire & Rubber Co.* (1983), 146 Cal. App. 3d 152, 194 Cal. Rptr. 51; Cal. Labor Code sec. 3602(a) (West 1983).) We therefore do not accept the plaintiff's argument that the dual-capacity doctrine was applicable simply because Albert Krass' status as an airplane pilot created obligations to the general public. Although we agree that such obligations existed, we do not find that they were unrelated to the obligations flowing from his role as employer.

■ The plaintiff next contends that the purchase of insurance to cover exactly this type of occurrence resulted in a waiver of the immunity afforded by the Act. Citing *Board of Education v. Chicago Teachers Union* (1981), 86 Ill. 2d 469, 427 N.E.2d 1199, she argues that when the employer funds benefits for special dangers an employee may be exposed to, the exclusivity provision of the Act is waived. In *Board of Education v. Chicago Teachers Union*, the Illinois Supreme Court held that a private employment contract between the board of education and the teacher's union to provide benefits in the case of a specific type of injury was enforceable and not barred by the exclusive-remedy provision of the Act. Here, there is no agreement between Albert Krass as employer and Lily Krass as employee. Rather, the plaintiff appears to consider the insurance policy as a third-party beneficiary contract for her benefit. This argument was considered in *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 280, 201 N.E.2d 434, 439, which rejected the plaintiff's assertion that the defendant's automobile liability insurance policy was a third-party beneficiary contract which allowed him to recover benefits in addition to those conferred by the Act.

The plaintiff also raises a policy argument in favor of waiver, maintaining that since the insurance purchased in the instant cause covers only this specific situation, failure to find a waiver of the exclusive-remedy provision would allow the insurer to collect a premium for coverage that could never be used. To support this argument, she relies upon the doctrines of charitable trust immunity and governmental immunity in which the existence of insurance results in a waiver of the immunity. *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1965), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204; Ill. Rev. Stat. 1985, ch. 85, par. 9—102.

■ The statute governing governmental immunity specifically provides that the purchase of liability insurance constitutes a waiver of immunity. (Ill. Rev. Stat. 1985, ch. 85, par. 9—103.) We find it significant that no similar provision is contained in the Workers' Com-

pensation Act. As stated earlier, the Act sets forth a comprehensive scheme intended to govern an injured employee's ability to recover against his employer. (*Sharp v. Gallagher* (1983), 95 Ill. 2d 322, 447 N.E.2d 786.) A holding that the employer's purchase of liability insurance will result in a waiver of the exclusive-remedy provision would seriously affect this comprehensive scheme. In our view, any such curtailment of the exclusive-remedy provision should be left to the legislature.

Accordingly, the judgment of the circuit court is reversed and the cause remanded with directions that the trial court enter judgment in favor of the defendant on the affirmative defense.

Reversed and remanded with directions.

JOHNSON and LINN, JJ., concur.