PHYLLIS MILLARD, PERSONAL REPRESENTATIVE OF THE ESTATE OF
EDMUND M. MILLARD, DECEASED, APPELLEE AND
CROSS-APPELLANT, V. HYPLAINS DRESSED BEEF, INC., A KANSAS
CORPORATION, ET AL., APPELLANTS AND CROSS-APPELLEES.
RICHARD H. WATERS III, PERSONAL REPRESENTATIVE OF THE
ESTATE OF RICHARD H. WATERS, JR., DECEASED, APPELLEE AND
CROSS-APPELLANT, V. HYPLAINS DRESSED BEEF, INC., A KANSAS
CORPORATION, ET AL., APPELLANTS AND CROSS-APPELLEES.

468 N.W.2d 124

Filed April 19, 1991.    Nos. 89-095, 89-096.

William G. Line, of Kerrigan, Line & Martin, for appellants.

David A. Domina, of Domina, Gerrard, Copple & Stratton, P.C., for appellees.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

WHITE, J.

In this appeal we are presented with the question of sanctions against an attorney and in the cross-appeal with the grants of summary judgments. The defense counsel in wrongful death actions has appealed the denial of attorney fees and costs, asserting that the wrongful death claims were frivolous and that plaintiffs' counsel should be ordered to pay appellants' attorney fees and court costs as provided in Neb. Rev. Stat. § 25-824(2) (Reissue 1989).

The defendants-appellants assign as error the trial court's denial of their motions for attorney fees and the trial court's rulings on evidentiary questions. The plaintiffs-appellees have cross-appealed the grants of summary judgments for the defendants. We affirm.

## FACTS

The underlying wrongful death actions were brought by the personal representatives of two employees who were killed in a 1986 plane crash. They sued the estate of the pilot, Sam V. Davis, and two of the companies he owned and controlled—Hyplains Dressed Beef, Inc., a meatpacking plant in Dodge City, Kansas, and its parent company, the S & R Land & Cattle Co., Inc. Davis also owned Cornland Dressed Beef, Inc., a meatpacking plant in Lexington, Nebraska, where the decedent Edmund M. Millard was plant superintendent and the decedent Richard H. Waters, Jr., was general manager.

On April 14, 1986, Davis and two passengers flew from Dodge City to Lexington, where they picked up Millard and Waters, and continued to Norfolk, Nebraska. In Norfolk, the

group toured a livestock slaughter and meatpacking facility. The parties disagree as to the purpose of the trip. The plaintiffs contend that Davis had a personal interest in the operation of the Norfolk plant and may have been considering its purchase, while the defendants argue that Davis planned to expand the Lexington operation and wanted his Cornland and Hyplains employees to see the kill floor that had been installed in Norfolk.

After the tour of the Norfolk facility, the group planned to go to Omaha to inspect another plant and to attend an American Meat Institute meeting. The plane crashed in a snowstorm soon after takeoff from Norfolk.

After the defendants' second motions for summary judgments were granted and the plaintiffs' petitions were dismissed, the defendants filed motions for attorney fees under § 25-824, claiming that the actions were frivolous because wrongful death claims are barred by the exclusive remedy of the Nebraska Workers' Compensation Act. The motions were denied, and the motions for new trial on sanctions were overruled. This appeal follows.

## CROSS-APPEAL

The plaintiffs-appellees have cross-appealed the grants of summary judgments for the defendants. In granting judgments for defendants, the trial court found that Davis was piloting the aircraft which crashed, resulting in the deaths of Millard and Waters. The court found evidence which disclosed that the decedents were employed by Cornland at the time of their deaths, that Davis was the president of Cornland, and that the decedents were killed while on a trip related to the business of Cornland (to inspect a meatpacking plant for the purpose of expanding the Cornland plant). The court held that Davis was an employee of the defendant corporations, as well as of Cornland. Because of the acceptance of workers' compensation benefits for the decedents from Cornland, the plaintiffs were precluded from recovering in tort against Cornland or Davis.

In our review of a summary judgment, this court views the evidence in a light most favorable to the party against whom the

judgment is granted and gives that party the benefit of all reasonable inferences deducible from the evidence. Moreover, summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Landon v. Pettijohn*, 231 Neb. 837, 438 N.W.2d 757 (1989).

Under state law the Nebraska Workers' Compensation Act, Neb. Rev. Stat. §§ 48-101 et seq. (Reissue 1988), is the employee's exclusive remedy against an employer for an injury arising out of and in the course of employment. "If the accident does not arise out of and in the course of the employment, there is no coverage, and the parties then are not subject to the act." *Marlow v. Maple Manor Apartments*, 193 Neb. 654, 659, 228 N.W.2d 303, 306 (1975). See, also, *Haumont v. City of Lincoln*, 229 Neb. 52, 424 N.W.2d 892 (1988). "Whether an accident arises out of and in the course of the employment must be determined by the facts of each case. There is no fixed formula by which the question may be resolved." *Thomsen v. Sears Roebuck & Co.*, 192 Neb. 236, 242, 219 N.W.2d 746, 750 (1974).

The plaintiffs assert that the decedents were employed by Cornland, an independent corporation controlled by Davis, but that the decedents had no relationship to Hyplains or S & R, the named defendants. They allege that the plane was registered to Hyplains, and it may have been owned by, registered to, or used by S & R. The plaintiffs' petitions state that the decedents were traveling in the plane at the special request of the defendants to assist and evaluate the Norfolk plant and its equipment and that they boarded the plane at the request of Davis and the corporate defendants.

While this court has not previously been faced with similar cases, we have dealt with the question of transportation provided by an employer in two instances. In *Kopfman v. Freedom Drilling Co.*, 220 Neb. 323, 327, 370 N.W.2d 89, 92 (1985), we held:

[T]ransportation furnished to an employee by an

employer either incident to the employment contract or because of the custom of the job the employee had with the employer operates to bring the employee within the scope of his employment for workmen's compensation purposes during the time of the transportation.

In *Schademann v. Casey*, 194 Neb. 149, 156-57, 231 N.W.2d 116, 122 (1975), we held:

[W]here incident to the employment contract, whether express, implied, or by custom, it is understood by the employer and employee that the employer will transport the employee to or from the place where the work is to be done, and the employer does so provide that transportation in a vehicle under the employer's control, an injury during that journey arises out of and in the course of employment.

Applying these rules to the present case, we find that the transportation was provided by the defendants, that it was under the control of the defendants, and that the injury and deaths of the decedents arose out of and in the course of their employment with Davis and his corporations. As such, the exclusive remedy of the plaintiffs is the Workers' Compensation Act.

The issue raised during the summary judgment phase concerned the employment relationships of the decedents and the defendants. The plaintiffs pleaded that (1) Davis controlled Hyplains and was the controlling shareholder of its parent company, S & R; (2) Davis used the corporate defendants as his alter ego and for personal benefit and purposes; and (3) the corporate defendants were operated as a single venture without regard to their purported separate corporate identities, functioning de facto as a single venture. While the plaintiffs did not urge the adoption of a "dual capacity" theory as an exception to the exclusive remedy provision, their position seems to be that they could pursue Davis in his capacity as owner of Hyplains and S & R, which was separate from his role as president of the employer, Cornland.

We have previously addressed the issue of dual capacity or "dual persona" as it relates to workers' compensation only briefly. In *Johnston v. State*, 219 Neb. 457, 364 N.W.2d 1

(1985), the plaintiff argued that where an injured employee does not recover full compensation under the workers' compensation laws, the court should apply the dual capacity doctrine in which "an employer may become liable to an employee in tort if, with respect to that tort, the employer occupies a position which places upon it obligations independent of and distinct from its role as an employer." *Id.* at 461, 364 N.W.2d at 4. The case dealt with the State Tort Claims Act, and we did not reach the question of whether the dual capacity theory should be adopted.

According to Professor Arthur Larson's treatise on workers' compensation, the dual capacity theory has been abandoned in most jurisdictions. See *Home Ins Co v Jones & Lamson,* 144 Mich. App. 91, 373 N.W.2d 249 (1985), *vacated* 424 Mich. 890, 381 N.W.2d 729. However, the Wisconsin Supreme Court has adopted a narrower version proposed by Professor Larson, the dual persona doctrine: "An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." 2A A. Larson, The Law of Workmen's Compensation § 72.81 at 14-229 (1990). Accord *Henning v. General Motors Assembly,* 143 Wis. 2d 1, 419 N.W.2d 551 (1988).

Even if we adopted a dual persona theory, the facts of these cases do not support its application here. We do not find that Davis had a second persona so unrelated to his status as employer that he would be a separate legal person. Cornland, Hyplains, and S & R were all intertwined and controlled by Davis, who ordered the decedents to accompany him to Norfolk and Omaha. Whether the purpose was to benefit the decedents' employer, Cornland, or to benefit one of the other entities does not alter Davis' liability. The decedents were employees whose professional expertise led them to be asked to provide their opinions, and those opinions were offered in the course and scope of their employment.

Two other airplane crash cases also support our holding. In *Ocasek v. Krass,* 153 Ill. App. 3d 215, 505 N.E.2d 1258 (1987), *cert. denied* 116 Ill. 2d 562, 515 N.E.2d 113, the estate of an

employee killed in an airplane crash brought a wrongful death action against the estate of the deceased employer, who was also the pilot. The pilot was the owner of the plane and used it for company business. Illinois courts had recognized the dual capacity exception to the exclusive remedy of the Illinois Workers' Compensation Act. The court stated that a plaintiff must first establish that the employer's second capacity " 'generates obligations unrelated to those flowing from the first, that of employer.' " *Id*. at 217, 505 N.E.2d at 1260. "[T]he plaintiff must show that the employer was acting as a 'distinct separate legal *persona*.' " *Id*. at 217-18, 505 N.E.2d at 1260.

The Illinois court held that

> the mere fact that the employer, as an individual, pilots an airplane, drives a car, or performs other such functions which impose upon him the duty to exercise due care, does not serve to endow him with a second legal *persona* completely independent from and unrelated to his status as an employer.

*Id*. at 218, 505 N.E.2d at 1260.

The pilot, "in undertaking to provide transportation for his employee on a company business trip . . . had an obligation as employer to exercise due care," *id*., but that did not meet the separate legal persona requirement. The trial court's grant of summary judgment for the plaintiff was reversed and the cause remanded with directions that the trial court enter judgment for the defendant.

In New York, the widow of an employee who was killed in an airplane crash when returning from a business trip sought to recover from the employer. See *Molinari v. Kar-San Dev.*, 117 A.D.2d 194, 502 N.Y.S.2d 552 (1986), *aff'd* 69 N.Y.2d 910, 509 N.E.2d 56, 516 N.Y.S.2d 457 (1987). The plane was owned by the employer defendant, but was piloted by an independent contractor. The court noted that the dual capacity doctrine had previously been declared "fundamentally unsound" by New York courts because it would " 'seriously undermin[e] the salutary social purposes underlying the existing workers' compensation scheme.' " 117 A.D.2d at 196, 502 N.Y.S.2d at 553.

The plaintiff asserted that the defendant's liability arose out of an independent transaction by which it became owner of the

plane and was not based on the defendant's status as the decedent's employer. The court held that the "defendant's acquisition and ownership of the airplane bore a direct relationship to the employment, for the airplane was used to fly employees, including decedent, on business trips for the benefit of defendant" and that the pilot was acting as defendant's agent. *Id.* at 197, 502 N.Y.S.2d at 554. Since the plaintiff had conceded that her action would be barred if the pilot had been an employee, the court dismissed the complaint, noting that "we cannot sanction circumvention of the exclusivity provisions . . . on the basis of 'illusory distinctions.' " *Id.*

It would be an illusory distinction were we to allow the plaintiffs here to pursue Davis and the corporate defendants on the basis which they urge. Examining the evidence in a light most favorable to the plaintiffs and giving them the benefit of all reasonable inferences deducible from the evidence, we find that the defendants are entitled to judgment as a matter of law and that the district court's grants of summary judgments were correct.

## SANCTIONS

Under Nebraska law a court may award attorney fees and court costs "against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith." § 25-824(2).

The defendants contend that the plaintiffs' lawsuits were frivolous because counsel could have learned with minimal investigation that wrongful death claims are barred by the exclusive remedy provisions of the Nebraska Workers' Compensation Act.

The district court found that the lawsuits were not filed in bad faith and were not frivolous, and overruled the defendants' applications for fees.

We have not previously been faced with determining the standard of review for a district court's overruling of a request for sanctions. The U.S. Supreme Court has stated that an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a federal district court's determination

of sanctions. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, ____ U.S. ____, 110 S. Ct. 2447, 2461, 110 L. Ed. 2d 359 (1990). Applying that standard to the present case, we find no error and affirm the judgment of the district court.

For a lawsuit to be deemed to be frivolous, there must be evidence that it was filed with an improper motive or based on "a legal position so wholly without merit as to be ridiculous." *Behrens v. American Stores Packing Co.*, 236 Neb. 279, 288, 460 N.W.2d 671, 677 (1990). A legal position without merit is one that is "without rational argument based on law and evidence to support a litigant's position in the lawsuit." *Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 814, 429 N.W.2d 347, 354 (1988). "[S]anctions should not be imposed except in the clearest cases." *First Nat. Bank v. Chadron Energy Corp.*, 236 Neb. 199, 201, 459 N.W.2d 736, 739 (1990).

When the present cases were filed, questions remained as to the employment relationships among the parties. Answers to these questions were necessary to determine any possible liability. The trial court overruled the defendants' first motions for summary judgment precisely because it believed that some genuine issue of material fact remained as to the employment relationships. It was only after the second motions for summary judgment, which followed additional discovery, including several depositions, that judgments in favor of the defendants were entered. No evidence has been presented to indicate that the lawsuits were wholly without merit, were filed with an improper motive, or were ridiculous. They were not filed frivolously or in bad faith, and sanctions are not appropriate.

Not before us at this time is the question of the timing of a motion for attorney fees. We note only for future reference that in the federal system a motion for allowance of attorney fees is a collateral and independent claim and, as such, need not be filed within the 10-day period for motions to alter or amend the judgment. The U.S. Court of Appeals for the Eighth Circuit

has suggested a 21-day time limit. The court also noted that the time for appeal of a judgment on the merits runs from the entry of judgment and that subsequent consideration of an attorney fee claim does not toll the time for appealing the judgment on the merits. *Obin v. Dist. No. 9 of Intern. Ass'n, Etc.*, 651 F.2d 574 (8th Cir. 1981).

## EVIDENTIARY QUESTIONS

On the cross-appeal the plaintiffs-appellees also assign as error the trial court's admission of depositions and affidavits which include statements asserted to have been made by Davis as to the purpose of the trip. The evidence was objected to on the basis of hearsay. The defendants-appellants' other two assignments of error object to rulings of the trial court concerning the exclusion of evidence. We do not find that the trial court's rulings on the evidence were clearly erroneous.

AFFIRMED.